**WESTVACO CORPORATION, ENVELOPE DIVISION, Plaintiff,**

v.

**James CAMPBELL, Commissioner, Department of Industrial Accidents and Robert Prenosil, Defendants.**

**Civ. A. No. 93–30129–F.**

United States District Court, D. Massachusetts.

Feb. 11, 1994.

---

Rosemary J. Nevins, Skoler, Abbott & Presser, Springfield, MA, for Westvaco Corp., Envelope Div.

James S. Whitcomb, Asst. Atty. Gen., Springfield, MA, for James Campbell.

Craig D. Robinson, Springfield, MA, for Robert Prenosil.

*MEMORANDUM REGARDING DEFENDANTS' MOTIONS TO DISMISS* [1]

(Docket Nos. 19 & 22)

PONSOR, United States Magistrate Judge.

## I. INTRODUCTION.

In November 1988, Robert Prenosil ("Prenosil" or "employee") began a leave of absence from a job at Westvaco Corporation ("Westvaco" or "plaintiff") that he had held for more than thirty years. The leave lasted two years, during which time Prenosil sought treatment for severe depression. Prenosil returned to work for about a month in early 1991, then left permanently due to his illness.

■ In June of 1992, plaintiff brought a claim under Massachusetts workers' compensation law for total disability benefits to compensate him for the depression that he claims arose from work-related stress and harassment. The claim for benefits was denied, but an appeal of Prenosil's claim is pending in administrative proceedings before the Massachusetts Department of Industrial Accidents.

In June of 1993, Westvaco brought suit in this court against both Prenosil and James Campbell, Commissioner of the Massachusetts Department of Industrial Accidents, seeking an order halting the state proceedings, which it claims are preempted by federal law. Defendants have now moved to dismiss based, *inter alia,* on the abstention doctrine in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For the reasons set forth below, the court will allow the defendants' motions.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

Most of the facts in this case are undisputed. Where disputes are supported on the

1. The parties to this action have waived their right to proceed before a district judge and consented to have this magistrate judge conduct any and all further proceedings in the case, including the trial, and order of entry of judgment. Fed. R.Civ.P. 73, 28 U.S.C. § 636(c).

record, the court will, of course, adopt plaintiff's version for purposes of this motion and carefully examine the complaint for a discernible claim.

Robert Prenosil worked in Westvaco's Flexible Packaging Division from December 1955, until April 1988, when he voluntarily transferred to the Envelope Division. The employees of both divisions are organized under the United Paperworkers International Union (UPIU), and Prenosil served as the Union Steward from 1978 until 1985, when he was elected union Vice President. Prenosil's new position greatly increased the scope of his responsibility.

After his transfer to the Envelope Division in 1988 and a brief leave for medical treatment unrelated to this case, Prenosil, as noted above, left work for more than two years (November 19, 1988 to January 13, 1991) undergoing treatment for severe depression. The alleged cause of the depression was harassment by the management of Westvaco. Although Prenosil claims this mistreatment began shortly after he was elected union Vice President in 1985, he concedes that he never filed a formal grievance with Westvaco for the harassment. Prenosil returned to work for one month, from January 13, 1991 to February 15, 1991. He then left work, again due to severe depression, and has not returned since.

On June 3, 1992, Prenosil filed a claim for total disability benefits pursuant to Mass. Gen.Laws ch. 152, § 34, alleging inability to work due to "anxiety and major depression" arising from "stress and harassment at the workplace." (Complaint, Exhibit 1, Section 28). The Envelope Division insurer, Westvaco, denied these benefits.

Prenosil's claim was then presented to a Conciliator pursuant to 452 CMR §§ 1.08 and 1.10, the adjudicatory regulations of the Massachusetts Department of Industrial Accidents ("DIA"). On November 19, 1992, the claim was heard at conference by Judge David K. Chivers, the appointed agent of the DIA, who denied indemnity benefits to Prenosil under Section 34. Prenosil then appealed this temporary order in a timely fashion pursuant to Mass.Gen.Laws ch. 152, § 10A(3).

The parties agree that a hearing *de novo* on the merits of this case (pursuant to Mass. Gen.Laws ch. 152, § 11) was scheduled to take place on April 16, 1993. Before this hearing, Westvaco filed a Motion to Dismiss Prenosil's claim, alleging lack of subject matter jurisdiction.

Westvaco contended that the DIA was preempted from hearing this claim by the National Labor Relations Act (N.L.R.A.), 29 U.S.C. §§ 157 and 158, and *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). Complaint ¶ 15. The gist of this argument is that Prenosil's workers' compensation claim is predicated upon allegations (employer harassment of an employee *due to union activity*) that, if proved, would constitute a cause of action under the N.L.R.A. Prenosil has not explicitly alleged any violations of the N.L.R.A. in the state proceeding.

Westvaco's Motion to Dismiss was denied by the Administrative Judge, and a hearing was set for June 16, 1993, then postponed to August 3, 1993. The hearing has been put over since then, pending a ruling by this court on this motion.

On June 22, 1993, Westvaco filed a complaint with this court, naming as defendants Robert Prenosil and James Campbell, Commissioner of the Massachusetts Department of Industrial Accidents. Plaintiff requested this court to declare the order of Judge Chivers denying the motion to dismiss void and to restrain defendants, their officers, agents and servants from proceeding with the hearing of this case.

Plaintiff argues that intervention by this court is necessary because it will suffer immediate and irreparable damage if the state hearing proceeds. Defendants point out that plaintiff has been examined by an impartial medical examiner, who has found his injuries to be due to the workplace harassment. Under Mass.Gen.Laws ch. 152, § 11A(1), such

an examination and determination constitutes "prima facie evidence of the matters contained therein." Westvaco contends that this impartial medical examination of Prenosil makes a judgment in his favor by the Administrative Judge a virtual certainty, and notes that Westvaco will then have to comply with the judge's decision and pay out monies within fourteen (14) days. According to plaintiff, these monies, once paid, will be almost impossible to recoup. Complaint at ¶ 20.

On October 15, 1993, both defendants moved to dismiss this case on the grounds of the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

## III. DISCUSSION.

Defendants' argument that this court should abstain from deciding this case based upon the *Younger* abstention doctrine is dispositive, and renders consideration of other grounds for dismissal unnecessary.

In *Younger,* John Harris, Jr. was indicted under a state criminal syndicalism statute. Harris filed in federal court for declaratory and injunctive relief from the state proceeding, claiming it would deprive him of First and Fourteenth amendment rights. The Supreme Court, citing its concerns for comity and federalism, held that, absent extraordinary circumstances, federal courts should abstain from exercising their jurisdiction in the face of ongoing state criminal proceedings unless the state defendant is threatened with irreparable injury or irretrievable loss. *Id.*

Later decisions have extended the holding of *Younger* beyond the criminal context and applied it to state administrative proceedings as well. *See Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (civil proceedings); and *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (administrative proceedings). The

*Younger* abstention doctrine has been applied in the First Circuit in *Bettencourt v. Bd. of Registration in Medicine,* 904 F.2d 772, 776 (1st Cir.1990) and in *Duty Free Shop, Inc. v. Administracion De Terrenos,* 889 F.2d 1181, 1183 (1st Cir.1989).

In *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Supreme Court set forth criteria to guide federal courts in determining when *Younger* abstention is appropriate. In *Dayton Christian Schools,* a teacher at a Christian day school was terminated for failure to abide by the school's internal dispute resolution policy. She sought relief via state administrative procedures, claiming deprivation of First Amendment rights and violation of due process. After the Ohio Civil Rights Commission commenced proceedings against Dayton Christian Schools, the latter filed for declaratory and injunctive relief in federal court, claiming that its free exercise rights were burdened by the administrative proceedings.

The Supreme Court held that the district court should have abstained from considering this case, and enumerated three conditions which, if met, require a federal court to hold off in the face of state proceedings. These are: 1) if the pending state administrative proceeding advances an important state interest, 2) if the federal plaintiff will have an adequate opportunity to litigate its federal claim in the state court system, and 3) if the ongoing state proceeding is judicial (as opposed to legislative) in nature. *Id.,* 477 U.S. at 627, 106 S.Ct. at 2722–23.

In this case, all three *Dayton Christian Schools* criteria are met.

First, the pending administrative proceeding upholds an important state interest. Massachusetts must administer its workers' compensation laws to ensure that employees injured on the job will receive needed subsistence. The establishment of a complex and detailed regulatory scheme for ensuring a state-wide system of relief for workers injured on the job is persuasive evidence of the Commonwealth's substantial interest in

workers' compensation proceedings. Other arguably less compelling interests have been recognized by federal courts as "important" for *Younger* purposes, including medical licensure, *Bettencourt v. Bd. of Reg. in Medicine*, 904 F.2d 772, 776 (1st Cir.1990) (quoting *Thomas v. Texas State Board of Medical Examiners*, 807 F.2d 453, 455 (5th Cir.1987)); licensure of attorneys, *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); licensure of dentists, *Allen v. Louisiana State Bd. of Dentistry*, 835 F.2d 100, 103 (5th Cir.1988), and state eminent domain proceedings, *Duty Free Shop, Inc. v. Administracion De Terrenos*, 889 F.2d 1181 (1st Cir.1989). The first *Dayton Christian Schools* criterion is met.

Second, Westvaco will have an adequate opportunity to litigate its federal preemption claim in the state court system. State court judges are obviously as able as this court to rule on a federal preemption claim. *See Bettencourt* and *Middlesex, supra. See also, Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Indeed, the Massachusetts courts are specifically directed to entertain appeals addressing constitutional issues such as the present one under Mass. Gen.Laws ch. 30A, § 14(7)(a) (court may act "if it determines that the substantial rights of any party may have been prejudiced because the agency decision is in violation of constitutional provisions ...").

Examples of Massachusetts courts addressing preemption issues arising from administrative proceedings include: *Liberty Mutual Ins. Co. v. Commissioner of Revenue*, 405 Mass. 352, 541 N.E.2d 566 (1989); *Brookline v. Commissioner of the Department of Environmental Quality Engineering*, 398 Mass. 404, 497 N.E.2d 9 (1986); *School Committee of Franklin v. Commissioner of Education*, 395 Mass. 800, 482 N.E.2d 796 (1985); *Thomson McKinnon Secur., Inc. v. Cucchiella*, 32 Mass.App.Ct. 698, 594 N.E.2d 870 (1992); *Massachusetts Elec. Co. v. Massachusetts Com. Against Discrimination*, 375 Mass. 160, 375 N.E.2d 1192 (1978). Plaintiff's argument that its constitu-

tional claim will be lost if the state workers' compensation hearings proceed is not persuasive.

Massachusetts' courts' ultimate disposition of the preemption issue is not relevant to the *Younger* analysis. What is crucial is that Westvaco will have the *opportunity* to make its preemption argument. *Duty Free Shop, Inc. v. Administracion De Terrenos*, 889 F.2d 1181, 1183 (1st Cir.1989).

Westvaco's opportunity to litigate fully the preemption issue in the state court system will proceed along a fairly well-marked path. After the *de novo* administrative hearing, which was scheduled for August 3, 1993 but has been postponed awaiting disposition of Westvaco's suit in this court, if Administrative Judge Chivers rules in favor of Prenosil and awards him benefits, Westvaco may appeal first to a reviewing board. Mass.Gen. Laws ch. 152, § 11C; 452 C.M.R. § 1.15. Following an adverse decision by the reviewing board, Westvaco may appeal to the Appeals Court of the Commonwealth pursuant to Mass.Gen.Laws ch. 30A, § 14. Mass.Gen. Laws ch. 152, § 12(2). An adverse decision in the Appeals Court still leaves Westvaco with recourse to the Supreme Judicial Court, Mass.Gen.Laws ch. 231, § 109, and from there to the United States Supreme Court.

Since Westvaco will have a full and fair opportunity to litigate its federal preemption claim in the ongoing state proceedings, the second prong of *Dayton Christian Schools* is met.

■ The ongoing state administrative workers' compensation proceedings are undoubtedly "judicial in nature." They involve a "judicial inquiry [that] investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Bettencourt, supra*, 904 F.2d at 778 (quoting *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 370–371, 109 S.Ct. 2506, 2519–20, 105 L.Ed.2d 298 (1989) (hereafter, *"NOPSI"*) ((quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29

S.Ct. 67, 69, 53 L.Ed. 150 (1908))). Therefore, the third prong of the *Younger/Dayton Christian Schools* analysis is met.

Finally there are no "extraordinary circumstances" which would preclude *Younger* abstention. *See F.T.C. v. Standard Oil Co. of California,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980) (holding that even substantial and unrecoupable loss does not amount to irreparable injury).

Given the court's obligation to abstain, no opinion will be offered on the merits of plaintiff's preemption claim, which will be addressed by the state court, or on the merits of defendants' alternative claims of lack of subject matter jurisdiction and failure to state a claim. This is appropriate under *Younger, supra,* and under *NOPSI, supra,* 491 U.S. at 364–365, 109 S.Ct. at 2515–16, which state that even a substantial preemption claim does not compel a court to consider the merits of a case from which it is abstaining under *Younger.* This court need not even take a "quick look" at the merits. *Id.*

## IV. CONCLUSION.

For the foregoing reasons, defendants' Motions to Dismiss based on the *Younger* abstention doctrine are hereby ALLOWED. A separate order will issue.