09-1215-cv
*Liberty Mutual Ins. Co. v. Hurlbut*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

Docket No. 09-1215

Argued: June 22, 2009                    Decided: November 4, 2009

LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, LM INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, WAUSAU BUSINESS INSURANCE COMPANY, WAUSAU GENERAL INSURANCE COMPANY, WAUSAU UNDERWRITERS INSURANCE COMPANY, PEERLESS INSURANCE COMPANY, PEERLESS INDEMNITY INSURANCE COMPANY, THE NETHERLANDS INSURANCE COMPANY, EXCELSIOR INSURANCE COMPANY, THE AMERICAN FIRE AND CASUALTY COMPANY, THE OHIO CASUALTY INSURANCE COMPANY,

Plaintiffs-Appellants,

- v.-

ROBERT H. HURLBUT, DONALD T. DECARLO, C. SCOTT BOWEN, JOHN F. CARPENTER, DENIS M. HUGHES, CHARLES L. LOIODICE, WILLIAM A. O'LOUGHLIN JR., KENNETH R. THEOBALDS, PATRICIA SMITH, in their official capacities as the COMMISSIONERS OF THE NEW YORK STATE INSURANCE FUND, ZACHARY S. WEISS, DONNA FERRARA, MONA A. BARGNESI, RICHARD A. BELL, GERALDINE CHAPEY, CANDACE K. FINNEGAN, SCOTT C. FIRESTONE, AGATHA EDEL GROSKI, KARL A. HENRY, MARK D. HIGGINS, FRANCES M. LIBOUS AND ELLEN O. PAPROCKI, in their official capacities as MEMBERS OF THE NEW YORK STATE WORKERS COMPENSATION BOARD,

Defendants-Appellees.

Before:   MINER, LIVINGSTON, Circuit Judges, and TRAGER, District Judge.[*]

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Chin, J.) in favor of defendants-appellees Commissioners of the Workers' Compensation Board of the State of New York and Trustees of the New York State Insurance Fund, in an action brought by

---

[*] The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

plaintiffs-appellants, Liberty Mutual Insurance Company and affiliate companies, challenging two amendments enacted in 2007 to the New York Workers' Compensation Law as violative of the Contracts, Takings, Due Process and Equal Protection provisions of the United States Constitution, the District Court having abstained from the exercise of federal jurisdiction and dismissed the action for that reason.

Affirmed.

Evan Glassman, Steptoe & Johnson LLP, New York, New York, for Plaintiffs-Appellants.

MARK F. HORNING, Jeffrey M. Theodore, Mark F. Horning, Steptoe & Johnson LLP, Washington D.C., for Plaintiffs-Appellants.

STEVEN C. WU (on behalf of Andrew M. Cuomo, New York State Attorney General;, Barbara K. Hathaway, on the brief), for Defendants-Appellees.

2

MINER, <u>Circuit Judge</u>:

Plaintiffs-appellants Liberty Mutual Insurance Company and affiliated companies ("Liberty Mutual") appeal from a judgment entered in the United States District Court for the Southern District of New York (Chin, <u>J</u>.) in favor of defendants-appellees, Commissioners of the Workers' Compensation Board of the State of New York (the "Board") and Trustees of the New York State Insurance Fund (the "Trustees"). Liberty Mutual brought the action giving rise to the judgment seeking injunctive and declaratory relief from two amendments to the New York Workers' Compensation Law enacted in 2007. Liberty Mutual challenges these amendments as violative of the Contracts, Takings, Due Process and Equal Protection provisions of the United States Constitution. Relying on the doctrine announced in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the District Court determined that the circumstances of this case required it to abstain from the exercise of federal jurisdiction and dismiss the complaint for that reason. We agree that abstention is appropriate but rely on different precedent.

**BACKGROUND**

I. The New York Workers' Compensation System — Policy and Procedure

The New York Workers' Compensation System is governed by the Workers' Compensation Law (the "WCL" or "Law"). The Law requires employers to pay benefits to workers who are injured or disabled during the course of their employment, regardless of fault. N.Y.

3

WORKERS' COMP. LAW § 10(1). These benefits include medical care, replacement of lost wages ("indemnify payments") and death benefits. Id. §§ 13, 14, 16. To assure that these payments are made, the Law requires employers to obtain insurance coverage in one of the following ways: purchase workers' compensation coverage from an approved insurance carrier ("Carrier") such as Liberty Mutual; secure coverage from the State Insurance Fund; or seek approval from the Board to act as a self-insurer. Id. §§ 10(1), 50. The benefits provided under the WCL are the exclusive remedies for injuries sustained by employees in the course of employment, and the Law thus forecloses any suit by an employee against an employer in tort. Id. § 11; see also O'Rourke v. Long, 41 N.Y.2d 219, 222 (1976). (The WCL "was designed to provide a swift and sure source of benefits to the injured employee or to the dependents of the deceased employee" in return for "the loss of the common-law tort action in which greater benefits might be obtained.").

The original law took effect on January 1, 1914, and the New York Court of Appeals soon thereafter recognized that the underlying policy of the Law was to "protect[] both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence." Jensen v. S. Pac. Co., 215 N.Y. 514, 524 (1915), rev'd on other grounds, 244 U.S. 205 (1917). Numerous refinements to the Law over the

4

years have resulted in a statute of some complexity.  As one judge of the New York Court of Appeals has put it, the Law has been the "object of constant legislative attention and fine-tuning," with various amendments, including 560 amendments between 1914 and 1961, and an Omnibus Reform amendment in 1996, all resulting in a "complex, integrated and unusually prescriptive statute."  See Greenberg v. N.Y. City Transit Auth., 7 N.Y.3d 139, 145–46 (2006) (Read, J., dissenting).

It has been estimated that more than 90% of employee claims for benefits under the standards provided by the WCL are paid without contest.  See MARTIN MINKOWITZ, NEW YORK PRACTICE SERIES: NEW YORK WORKERS' COMPENSATION, § 15:1, at 594 (2003).  The Law provides a comprehensive system for resolving contested claims.  The responsibility for operation of that system lies with the Board.  N.Y. WORKERS' COMP. LAW § 20(1).  An injured worker who seeks benefits under the WCL is required to file a claim with the Board or his employer.  Id. § 20.  The carrier is afforded the opportunity to dispute the claim, id. § 25(2)(a); N.Y. COMP. CODES R. & REGS. tit. 12, § 300.22(a), and the dispute is addressed in the first instance by a Workers' Compensation Law Judge ("WCLJ").  See N.Y. WORKERS' COMP. LAW § 150; N.Y. COMP. CODES R. & REGS. tit. 12, § 300.1(a)(10).  A party dissatisfied with the decision of the WCLJ may seek administrative review by a three-member Board panel and, if review is granted and the panel does not make a unanimous decision, review of the full Board is mandated upon request of either party; if the decision is unanimous, any party

5

may seek discretionary review by the full Board.  The statutory scheme allows a party to seek judicial review of the Board's administrative decision in the New York State Supreme Court, Appellate Division, Third Department.  N.Y. WORKERS' COMP. LAW § 23.  The designation of a single court for this purpose implements the legislative intent to establish a judicial forum having "specific expertise to deal with the complexity" of the issues presented in workers' compensation cases.  Empire Ins. Co. v. Workers' Comp. Bd., 607 N.Y.S.2d 675, 675 (N.Y. App. Div. 1994).  The Law provides that appeals in workers' compensation cases "shall be heard in a summary manner and shall have precedence over all other civil cases in such court."  N.Y. WORKERS' COMP. LAW § 23.  An opportunity for further review may be sought in the New York State Court of Appeals, and "[a]n appeal to the appellate division of the supreme court, third department, or to the court of appeals, shall not operate as a stay of the payment of compensation required by the terms of the award or of the payment of the doctors' bills found to be fair and reasonable."  Id. (2007).

The jurisdiction of the Board is far-reaching.  The WCL, administered by the Board, covers approximately 7.9 million workers.  See N.Y. STATE WORKERS' COMPENSATION BOARD, BASIC FACTS ABOUT THE BOARD, at www.wcb.state.ny.us, \content\main\TheBoard\ factsht.jsp (last visited Sept. 21, 2009).  In 2006, the Board received 140,109 new claims, re-opened 182,028 claims; received 13,258 applications for appeals; and rendered 12,072 decisions.

6

Id. The Law vests the Board with extensive powers beyond the adjudication of claims. For example, it licenses workers' compensation attorneys, N.Y. WORKERS' COMP. LAW § 24-a; approves or rejects medical providers, id. § 13-b-13-e; and brings certain enforcement proceedings not related to the challenged amendments, id. § 26, 54-b, 141-a. Among the Board's powers is the authority to order payments for certain types of indemnity awards to be made to the Aggregate Trust Fund ("ATF"). The ATF is administered by the Trustees as an aggregate, indivisible fund separate and apart from other money held by the State Insurance Fund. Id. § 27. Deposits to the ATF ordered by the Board are made by insurance carriers and, at the Board's discretion, by self-insured employers. Id. § 27.

Prior to the 2007 amendments subject of this appeal, mandatory deposits to the ATF were made for "scheduled" awards for permanent partial disability ("PPD"). A PPD is a condition that restricts an employee's ability to work but does not totally foreclose it. A "scheduled" award is so-called because it refers to a statutory schedule that identifies certain injuries such as loss of a limb and sets the compensation amount for the injury. See id. § 15(3). PPD awards for injuries not identified in the schedule are determined by a WCLJ and are designated as "non-scheduled" or "classified." See id. § 15(3)(w). Until 2007, the Board was not required to order an ATF deposit for a non-scheduled award, although it had the discretion to do so.

Single, lump-sum payment settlements, whereby an injured

7

employee agrees to waive all past, present, and future indemnity payments and medical benefits, were authorized by the WCL prior to the 2007 amendments. See id. § 32(a) (2007). Approval by the Board of such agreements, known as "waiver agreements" or "section 32 settlements," is mandatory, and the Board may deny approval or order modification in the case of a proposed settlement that is "unfair, unconscionable, or improper as a matter of law." Id. § 32(b)(1); N.Y. COMP. CODES R. & REGS. tit. 12, § 300.36(d), (e). Court review may be sought in the case of the Board's disapproval of a settlement. Id. § 300.36(g).

II.  The 2007 Amendments and the Challenge

The 2007 amendments, inter alia, extended the requirement that deposits to the ATF be made for scheduled awards to require that such deposits be made by private carriers in all PPD cases where long-term benefits are awarded, thus ending the distinction between scheduled and non-scheduled awards. See N.Y. WORKERS' COMP. LAW § 27(2). The Board calculates the deposit by ascertaining the present, discounted value of future long-term benefits owed by the carrier to the injured employee. After making the deposit, the carrier is "discharged from any further liability" for indemnity payments but remains liable for medical benefits. Id. § 27. Future indemnity payments are then made by the ATF. A carrier may contest a PPD claim and a deposit order in administrative and judicial review proceedings but has no further part to play with regard to indemnity payments after the deposit is made. Id. § 27(3).

8

Another provision of the 2007 amendments relates to the settlement of workers' compensation claims. WCL § 32 as revised provides a new time frame for settlements, requiring carriers to make settlement offers within two years of the indexing of claims by the Board or six months after classification of a permanent disability, whichever is later. See id. § 32(a). The amendments also conferred settlement authority upon the ATF for indemnity benefits. This authority becomes vested following a mandatory deposit. Although the ATF may reach a settlement for less than the amount of the carrier's deposit, the carrier is not entitled to a refund of the excess paid. Id. § 27(8). ATF settlements are reviewed under the same regulations that govern waiver and settlements initiated by carriers and must be approved in the same way. Although the settlement decisions of the ATF do not require the consent of the carrier that made the deposit, it is the policy of ATF to "provide to the funding carrier a minimum of 60 days advance notice prior to entering a settlement agreement." See New York State Insurance Fund, Interoffice Memorandum, Claims Medical Bulletin # 2007-4.

Liberty Mutual's constitutional challenges are directed to the 2007 amendments to WCL §§ 27 and 32. Specifically, Liberty Mutual asserts that, because the amendments apply to awards of compensation, not policies of insurance, issued after July 1, 2007, they operate substantially to impair contracts of insurance (insurance policies) in violation of the Contracts Clause. According to Liberty Mutual, the retroactive application of the

9

amendments "impairs both specific provisions of Liberty Mutual's insurance policies and the overall balance of liabilities and premiums that is the most critical element of an insurance contract."  Liberty Mutual alleges that the Contracts Clause violations arise from the imposition of the 3% fee that ATF collects under the amendments to administer a claim after a deposit is made; from the restriction of its former contractual right to pay compensation benefits on the basis of a multi-year schedule is restricted; and from the elimination of its right to settle claims after a deposit has been made.  Contending that the retroactivity of the amendments will impair contracts entered into prior to the retroactivity date, Liberty Mutual contends that it will sustain enormous losses by reason of the lack of a premium adequate to cover liability under the new regime.

Liberty Mutual therefore contends that the WCL amendments "operate[] as a substantial impairment of a contractual relationship," Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978), that the amendments do not "have a significant and legitimate public purpose," Energy Reserves Group, Inc. v. Kan. Power & Light Co., 459 U.S. 400, 411 (1983), and, if the amendments do have such a purpose, they are not "reasonable and necessary" to the attainment of the purpose, U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977).  Accordingly, Liberty Mutual argues that there is a clear violation of the constitutional provision that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ."  U.S.

10

CONST. art. I, § 10, cl. 1.

Liberty Mutual also asserts that the amendments are violative of the Due Process Clause, see U.S. CONST. amend. XIV, § 1, because WCL § 32 as amended "bars an insurer from appearing before the ATF and WCB on settlements of claims asserted against its own insurance policies and also prohibits judicial review of WCB decisions approving such settlements." Liberty Mutual contends that these provisions violate due process by depriving it of an opportunity to be heard, since WCL § 32(e) now provides that "no consultation or approval of any . . . insurance carrier . . . shall be required before [the ATF] may enter into any waiver agreement, or before the [WCB] may approve such waiver agreement." Although an insurer has nothing further to do with the funds deposited with the ATF, Liberty Mutual claims a property interest in the funds that may be used by ATF for the settlement of claims made against Liberty Mutual's insureds. Liberty Mutual also claims due process violations because it is denied judicial review of such settlements, N.Y. WORKERS' COMP. LAW § 32(f); because ATF keeps any deposits in excess of settlements; and because the ATF is administered by the New York State Insurance Fund, a competitor of Liberty Mutual and the State's largest carrier of workers' compensation insurance.

Finally, Liberty Mutual challenges the 2007 amendments as violative of the Equal Protection Clause. See U.S. CONST. amend. XIV, § 1. The basis for this challenge lies in the fact that self-insured employers are not required to make deposits to the

11

ATF as are private carriers. Although the reason given for the deposit requirement is to protect claimants against the risk of insurer insolvencies, Liberty Mutual contends that "there is no rational basis to impose these measures on insurers, who are already subject to multiple layers of solvency requirements, but not on self-insured employers, who are not so heavily regulated." Liberty Mutual contends that the discrimination in the requirement of deposits to ATF is irrational, because injured workers already are protected by the Workers' Compensation Security Fund, see N.Y. WORKERS' COMP. LAW § 106, which pays awards of compensation in the case of default by an insolvent carrier and is financed by annual assessments on all insurers, see id. § 108.

A previous challenge to the constitutionality of amended WCL § 27 was presented to the Workers' Compensation Board by Wausau Insurance Company, an affiliate of Liberty Mutual and a plaintiff-appellant in this action. In the Board proceeding, bearing WCB case number 7050-8896, Daniel Del Plato was named as claimant and Genesee County ARC was named as employer. In its application for Board review of the decision of a WCLJ, Wausau argued that the direction that it deposit funds into the ATF in payment of a PPD award is "not only unconstitutional, but also premature and that the calculation of such a deposit was inaccurate." Wausau asserted in its administrative protest that self-insured employers and the State Insurance Fund "are treated differently [from Wausau] in regard to a direction to make a

12

deposit into the Aggregate Trust Fund and therefore, such a direction is unconstitutional." The WCB made an interim determination with respect to Wausau's claim; it rescinded the direction to deposit without prejudice and adjourned the case pending resolution of Wausau's claim for reimbursement under WCL § (15)(8)(d). See Employer Genesee Co. ARC, No. 7050 8896, 2008 WL 4862978 (N.Y. Work. Comp. Bd. Oct. 31, 2008). There does not yet appear to be a ruling on the merits of the constitutional claim.

III. The Decision of the District Court

In its Memorandum Decision of March 9, 2009, the District Court determined "that the abstention doctrine set out in Younger v. Harris, 401 U.S. 37 (1971), mandates dismissal of the case for lack of subject matter jurisdiction." Liberty Mut. Ins. Co. v. Hurlbut, No. 08 CIV 7192, 2009 WL 604430, at *3 (S.D.N.Y. Mar. 9, 2009). The District Court noted that "under Younger, abstention is mandatory when '(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims.'" Id. (quoting Hartford Courant Co. v. Pelligrino, 380 F.3d 83, 100-01 (2d Cir. 2004)).

Applying the foregoing factors in the case at hand, the District Court determined that Liberty Mutual was involved in pending workers' compensation proceedings involving disputes over PPD benefit claims in which the Board has ordered Liberty Mutual

13

to make ATF deposits pursuant to the challenged amendments. Id. Rejecting Liberty Mutual's contention that only state civil enforcement actions implicate Younger abstention, the District Court found that workers' compensation proceedings are indeed judicial in nature and implicate inquiries that investigate, declare, and enforce liabilities. Id. at *3-4. Moreover, the District Court concluded that, although the proceedings involve private parties, the state has an interest "beyond its interest as adjudicator of wholly private disputes." Id. at *4 (internal quotation marks omitted).

Turning to the factor of important state interest, the District Court observed that the general welfare of the state is promoted by compensating workers for all injuries they sustain in the course of employment and in preventing them from losing the means of support by reason of such injuries. Id. at *5. According to the District Court, the state interest is evidenced by the detailed regulatory scheme put in place by the state to ensure workers a statewide system designed to provide relief for job-related injuries. Id. The District Court found that "[t]he preliminary injunction [against enforcement of the challenged WCL amendments] sought by plaintiffs would interfere with these regulatory mechanisms." Id.

Finally, the District Court determined that judicial review of Liberty Mutual's constitutional claims was available within the system established by the state. Id. Because review of WCB decisions is available in the Appellate Division, Third

14

Department, and because this review extends to WCB orders directing ATF deposits, the District Court found that Liberty Mutual's constitutional challenge to WCL §§ 27 and 32 can be mounted in the state court. Id. Accordingly, the District Court concluded that the third Younger factor has been met here.

The District Court rejected Liberty Mutual's argument that the state and federal actions are not significantly closely related so as to justify Younger abstention, holding that different parties and different issues in the two actions do not preclude abstention; that Liberty Mutual had not indicated that it would be barred from constitutional challenges in the state proceedings; and that at least one such challenge had been mounted by Liberty Mutual in a WCB proceeding already. Id. The District Court also rejected Liberty Mutual's argument that no state proceedings would actually be enjoined by this federal action and therefore that Younger does not apply, on the ground that this argument "interpret[s] the doctrine too narrowly." Id. at *6. All that is needed, according to the District Court "is an ongoing state proceeding implicating an important state interest, [where the] state proceeding affords the federal plaintiff an adequate opportunity for judicial review of its constitutional claims." Id.

**ANALYSIS**

In Younger v. Harris, the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury, should not enjoin a

15

criminal proceeding in a state court. This determination is said to have been based on "proper respect for the fundamental role of States in our federal system" as well as equitable principles. Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 626 (1986). Recognizing a special "concern for comity and federalism," the Supreme Court has

> applied the Younger principle to civil proceedings in which important state interests are involved . . . [and] also [has] applied it to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim.

Id. at 627 (internal citations omitted).

The Court has described three considerations that prompt abstention in the face of broad-based challenges to state statutes: (1) that a federal court will interpret state law without having the benefit of a state court interpretation which may come at a later time and be at odds with the federal court interpretation; (2) that the federal court decision may encompass matters as to which there is no real case or controversy; and (3) that the domestic policies of a state may be unnecessarily obstructed when a state court is impeded from interpreting and applying the state's statutes. See Moore v. Sims, 442 U.S. 415, 428-29 (1979) (requiring Younger abstention in action challenging constitutionality of child abuse statute during pendency of state juvenile court protective proceedings).

Reviewing Supreme Court precedent, we have noted that Younger abstention is appropriate where "that 1) there is an

16

ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 105 (2d Cir. 1997) (internal quotation marks omitted); see also Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003). The existence of ongoing state proceedings is an essential requirement for Younger abstention: "Absent any pending proceeding in state tribunals, . . . application by the lower courts of Younger abstention [is] clearly erroneous." Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992). Not only must state proceedings be pending in order to invoke Younger, the proceedings must have been initiated "'before any proceedings of substance on the merits have taken place in the federal court.'" Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 238 (1984) (quoting Hicks v. Miranda, 422 U.S. 332, 349 (1975)).

For example, in Christ the King Reg'l High Sch. v. Culvert, 815 F.2d 219 (2d Cir. 1987), the Lay Faculty Association of a Catholic high school filed an unfair labor practice charge with the New York State Labor Relations Board. In that administrative proceeding, the Association charged the School with refusing to bargain and with discharging striking members of the Association. Various proceedings transpired before the Board, and some months after the inception of the proceedings, the School commenced a federal court action asserting, as it did before the Board, that the Board's exercise of jurisdiction would be violative of the

17

Establishment and Free Exercise Clauses of the Constitution and was preempted by the National Labor Relations Act.

The District Court granted summary judgment to the Board and the Association, but on appeal we determined that dismissal, predicated upon Younger abstention, should have been granted. In doing so, we referred to the Supreme Court's holding in Dayton Christian Schools "that a federal court should not enjoin a pending state administrative proceeding when important state interests are involved, as long as the federal plaintiff will have a full and fair opportunity to litigate constitutional claims during or after the proceedings." Culvert, 815 F.2d at 224. Such opportunities were available to the plaintiff in Culvert.

With respect to the requirement for ongoing proceedings in Culvert, we concluded: "As in Dayton Christian Schools, the administrative agency in this case has not yet conducted its formal hearing or imposed any sanctions; hence, an ongoing state proceeding exists." Id. In support of Younger abstention, we also found that there was an important state interest in the regulation of the duty to bargain collectively and that litigation of the constitutional claim was available before the State Labor Relations Board and before the New York State Supreme Court pursuant to Article 78 of the New York Civil Practice Law and Rules. Id. at 224-25.

In the same vein is Westvaco Corp. Envelope Division v. Campbell, 842 F. Supp. 1472 (D. Mass. 1994), in which an employer

18

sought to enjoin the Massachusetts Department of Industrial Accidents from considering an injured worker's claim under a system analogous to that established by New York's WCL. At the time the action was commenced, the claim had been denied and administrative proceedings were pending. The employer contended that the claim was preempted by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157-58. The employee claimed that he was totally disabled from work due to anxiety and major depression arising from harassment and stress in the workplace. The employer's argument was that the employee's claim of harassment, if proven to be due to union activity, would fall within the provisions of the NLRA. In dismissing the federal action on the basis of the Younger abstention doctrine, the court found that "the pending administrative proceeding upholds an important state interest," that the employer "will have an adequate opportunity to litigate its federal preemption claim in the state court system," and that "[t]he ongoing state administrative worker's compensation proceedings are undoubtedly 'judicial in nature.'" Id. at 1475-76.

Common to all the cases in which the Younger abstention doctrine is applied is the need to find that state proceedings, whether they be criminal, civil or administrative, are ongoing or "pending." See 1A FEDERAL PROCEDURE LAWYERS' EDITION § 1:621 (2002). The requirement is not fulfilled if the proceedings "are merely incipient or threatened." Id. § 1:622. The pendency of state proceedings is problematic in the case now before us. At least

19

as to ATF's authority to settle claims after deposits are made under the amendment to WCL § 32, it is clear that no state administrative or judicial proceedings challenging the amendments are pending. Indeed, Liberty Mutual advises that "the ATF has not entered into any settlements of claims against Liberty Mutual since passage of the 2007 legislation, and thus no settlement-approval proceedings have been instituted." Liberty Mutual contends that it will be unable to challenge amended § 32 in any event because it is barred by statute from objecting to ATF's settlements. It is not clear that this is so. See N.Y. COMP. CODES R. & REGS. tit 12, § 300.36(d)(3).

As to the issue of the retroactivity of the 2007 amendments, the constitutional question has been raised before the Board, as previously noted. However, there is no indication from either side whether the claim, relating to an injury that occurred in 2005, is still pending. As to the mandatory deposits now provided for in § 27, it appears that deposits have been made in some cases and administrative review of deposit orders has been sought in others. Again, we have not been favored with specific information as to whether any proceedings regarding the mandatory deposits are pending or ongoing in any state tribunal.

Our concerns with the applicability of the Younger doctrine in the case at bar lead us to consider another closely-related abstention doctrine which we think is applicable in this case. We rely on that doctrine, known as Burford abstention, to affirm the judgment of the District Court. In doing so, we exercise our

20

discretion to "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." Doninger v. Niehoff, 527 F.3d 41, 50 n.2 (2d Cir. 2008) (internal quotation marks omitted); see also ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003). Although we do not pronounce on the merits of the Younger abstention question or use it as the basis for dismissal in this case, we note that learned treatise authors have written that "[a]nalytically the cases in which [Younger abstention] requires a federal court not to act . . . appear to be a special case of Burford-type abstention." 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice & Procedure § 4241, at 318 n.70 (3d ed. 2007).

In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the plaintiff invoked the equity jurisdiction of the federal court in seeking to enjoin an order of the Texas Railroad Commission permitting the drilling of four wells on land in East Texas. Claiming the protection of the Fourteenth Amendment, the plaintiff challenged the reasonableness of the Commission's grant of the oil-drilling permit. Taking note of the need of the state to protect the oil and gas industry as well as the public interest, the Court found that

> Texas interests in this matter are more than that very large one of conserving gas and oil, two of our most important natural resources. It must also weigh the impact of the industry on the whole economy of the state and must consider its revenue, much of which is drawn from taxes on the industry and from mineral lands preserved for the benefit of its educational and eleemosynary institutions. To prevent "past, present,

21

and imminent evils" in the production of natural gas, a statute was enacted "for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production." The primary task of attempting adjustment of these diverse interests is delegated to the Railroad Commission which Texas has vested with "broad discretion" in administering the law.

Id. at 320.

The Court observed that the Railroad Commission had acquired specialized knowledge and that, "[a]s a practical matter, the federal courts can make small contribution to the well-organized system of regulation and review which the Texas statutes provide." Id. at 327. The Court further observed that "[t]he state provided a unified method for the formation of policy and determination of cases by the Commission," that federal court intervention could very well lead to conflicting interpretations of state law and the defeat of state policies, and that "expeditious and adequate" state court judicial review of Railroad Commission decisions was available. Id. at 333-34. The Court concluded that, under the circumstances revealed, proper respect for independent state action commanded abstention and dismissal of the complaint.

Citing Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341 (1951), a case wherein a railroad sought to enjoin enforcement of an order of the Alabama Public Service Commission denying permission for the discontinuance of unprofitable rail lines, and referring to other cases as well, the Supreme Court in New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989), "distilled" the Burford

22

doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

(internal quotation marks omitted).

We have identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public. Those factors are as follows: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." Hachamovitch v. DeBuono, 159 F.3d 687, 697 (2d Cir. 1998) (Burford abstention not warranted in case of due process challenge to state physician discipline statute for lack of procedure to reopen misconduct proceedings to consider newly discovered evidence).

Important to its conclusion in the Burford case itself were the Court's findings that "[t]he state provides a unified method for the formation of policy and determination of cases by the [Railroad] Commission and by the state courts" and that "[t]he judicial review of the Commission's decisions in the state courts

23

is expeditious and adequate." Burford, 319 U.S. at 333-34. In Alabama Public Service Commission, the Court emphasized the importance of the availability of recourse to the state courts:

> Not only has Alabama established its Public Service Commission to pass upon a proposed discontinuance of intrastate transportation service, but it has also provided for appeal from any final order of the Commission to the circuit court of Montgomery County as a matter of right.

Ala. Pub. Serv. Comm'n, 341 U.S. at 348. Citing Burford, the Court stated: "Whatever rights [the Railway Company] may have are to be pursued through the state courts." Id. at 350. And while it may "seem[] too narrow to try to confine Burford, and the later case of Alabama Public Service Commission to their own facts and to hold that this kind of abstention is proper only when a case involves basic matters of state policy, complicated by nonlegal considerations of a predominantly local nature, and the state has specially concentrated all judicial review of administrative orders of the sort involved in a single state court," 17A WRIGHT, COOPER, MILLER & AMAR, supra, § 4244, at 383–85, consideration of the principles enunciated in the cited cases surely is warranted in assessing the viability of Burford-type abstention.

In undertaking the assessment here, we find that federal review of the WCL amendments as sought by Liberty Mutual would "threaten[] to frustrate the purpose of the complex administrative system that [New York] ha[s] established." See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 725 (1996). The WCL is a reticulated statute that governs a complex system

24

designed to benefit the interests of employer and employee in the State of New York. Maintaining the balance between these interests has been the goal throughout the history of the statute. To that end, an elaborate system for the compensation of those injured in the course of employment has been established, with due consideration for the financial burdens imposed on employers and their insurers. Indeed, the 2007 amendments to the WCL (and there are a number not under attack here) are designed to maintain the balance. This is evidenced by the statement of Purpose set forth in the Sponsor's Memo of the New York State Assembly Bill proposing the Amendments:

> This bill establishes comprehensive reforms to New York's workers' compensation law by: (1) increasing maximum and minimum benefits for injured workers and indexing the maximum to New York's average weekly wage; (2) dramatically reducing costs in the workers' compensation system, making hundreds of millions of dollars available annually to be translated into premium reductions; (3) establishing enhanced measures to combat workers' compensation fraud; (4) replacing the Special Disability Fund with enhanced protections for injured veterans; (5) preventing insurance carriers from transferring costs to New York employers by closing the Special Disability Fund to new claims; and (6) creating a financing mechanism to allow for settlement of the Fund's existing liabilities.

New York Sponsors Memorandum, 2007 A.B. 6163, New York Assembly, 230th Legislature, 2007 Regular Session.

The WCL establishes an integrated system with interdependent parts. It is a statute with a high level of specificity. As is apparent from the statement of the Sponsor, the amendments challenged here very much take into account the historic balance of interests that has been the hallmark of the policy underlying

25

the WCL. The manner of compensating workers for lost wages and medical expenses incurred by virtue of work-related injuries has presented public policy questions that have been debated and resolved in various ways over many years. The adjustments provided by the 2007 amendments to the WCL therefore serve to classify the subject matter of this litigation as a matter of traditional and substantial state concern. In carrying out coherent public policy objectives, the New York Legislature has been very specific in prescribing the methods and means for providing compensation for injured workers.

Not only would federal court intervention be disruptive of a carefully established state system, it might also yield inconsistent and therefore conflicting results. For example, a federal court decision respecting the retroactivity of the amendment to WCL § 27, relating to deposits to the ATF for non-scheduled awards, may well conflict with WCB decisions already made on the same issue. Moreover, the deposits now required are part and parcel of the entire integrated and balanced system, providing as it does for the assurance of payments after determinations are made regarding the extent of injury and the present value of future long-term payments. Likewise, the settlement authority conferred upon the ATF by the provisions of amended WCL § 32 would be fraught with uncertainty by differing interpretations of the provision at the state and federal levels. Federal review of the 2007 amendments here would unduly disrupt the administration of the New York WCL, would interfere with

matters of substantial public concern and would hamper resolution by the state of challenges similar to those made here. The issues joined in this case, including constitutional issues, should be resolved by the WCB and by the New York court specifically designated to provide adequate and expeditious review of WCB decisions.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is affirmed.