17-2400
*Ortho-Clinical Diagnostics Bermuda Co. et al. v. FCM, LLC et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand eighteen.

PRESENT:

> PETER W. HALL,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> JOHN G. KOELTL,
> > *District Judge.*\*

_____

ORTHO-CLINICAL DIAGNOSTICS BERMUDA CO. LTD.,
a Bermuda exempted Limited Liability Company,
ORTHO-CLINICAL DIAGNOSTICS, INC., a New York
Corporation,

> *Plaintiffs-Appellants*,

> v.                                                     No. 17-2400-cv

FCM, LLC, a Delaware Limited Liability Company,
MITCHELL HABIB, an Ohio Resident,

> *Defendants-Appellees*.

_____

---

\* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PLAINTIFFS-APPELLANTS:           MELISSA ARBUS SHERRY (Allen M.
Gardner, Scott C. Jones, Alexandra P.
Shechtel, *on the brief*), Latham & Watkins
LLP, Washington, DC.

FOR DEFENDANTS-APPELLEES:           AIDAN SYNNOTT (Shane D. Avidan,
Elizabeth J. Grossman, *on the brief*), Paul,
Weiss, Rifkind, Wharton & Garrison LLP,
New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 6, 2017, is **AFFIRMED**.

Plaintiff Ortho-Clinical Diagnostics Bermuda Co. Ltd. ("Ortho") appeals from the District Court's dismissal of its breach of contract claims against FCM, LLC ("FCM"), arising out of the parties' IT consulting agreement and subsequent termination of that agreement.[1] Ortho contends that the District Court erred when it found (1) that Ortho released its claim for breach of the parties' initial agreement, under which FCM agreed to provide Ortho with an independent IT operating system (the "Engagement Agreement"), and (2) that Ortho failed to plead adequately that FCM breached the parties' Settlement Agreement by not providing the required "Transition Assistance." We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "accept[ing] as true all factual allegations in the complaint and draw[ing] all reasonable inferences in favor of the plaintiff." *Progressive Credit Union v. City of*

---

[1] Plaintiff Ortho-Clinical Diagnostics, Inc., an entity related to plaintiff Ortho-Clinical Diagnostics Bermuda Co. Ltd., also appeals the dismissal of its breach of contract claims against FCM. Additionally, both Ortho entities appeal the dismissal of their claims against Mitchell Habib, FCM's Chief Executive Officer. Neither plaintiff contests, however, that Ortho-Clinical Diagnostics, Inc., and Habib are not parties to either of the contracts at issue here. Accordingly, we affirm the District Court's dismissal of the breach of contract claims brought by Ortho-Clinical Diagnostics, Inc., against both defendants, and the breach of contract claim brought by Ortho-Clinical Diagnostics Bermuda Co. Ltd. against Habib.

*N.Y.*, 889 F.3d 40, 48 (2d Cir. 2018). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**I.    Background**

In May 2014, Ortho engaged FCM to build it an IT operating system. In the Engagement Agreement, FCM agreed to build the system by "lifting" functionality from the existing IT system that Ortho was then using (and for which it paid nearly $4 million per month to a corporate affiliate) and "shifting" that functionality, over 25 months, to a new, independent system. Although the size of the transaction was significant—Ortho agreed to pay FCM $70 million for the system—the Engagement Agreement set forth few details. Importantly, it neither contained technical specifications for the final product (Ortho's IT system) nor described with particularity the methods FCM would use to build the product, other than referring generally to a "lift and shift" approach.[2]

Ortho alleges that, because of FCM's mismanagement of subcontractors and failure to meet promised objectives, its relationship with FCM quickly deteriorated. On March 30, 2015—ten months into the 25-month contract—FCM and Ortho entered into a second agreement (the "Settlement Agreement"), by which the parties intended to end the engagement. The Settlement Agreement terminated FCM's obligation to deliver a complete IT system to Ortho. In it, FCM agreed to provide "Transition Assistance" to Ortho while Ortho transferred the project to a different contractor. FCM also agreed to release all of its related claims against Ortho. Ortho, however, agreed to release only those claims against FCM that were "actually known" to three named Ortho executives (Ortho's Chief Executive Officer, Chief Operating Officer, and Director of IT) when the Settlement Agreement was signed.

---

[2] When evaluating the adequacy of a complaint, we may consider documents attached to and incorporated by reference in the complaint. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). In Ortho's case, these include the Engagement Agreement and Settlement Agreement.

After entering into the Settlement Agreement, Ortho allegedly discovered that FCM had completed far less preparatory work than Ortho had believed. In particular, FCM had not created the "end-to-end" infrastructure plans that Ortho saw as necessary to enable subcontractors to complete their assigned work. Joint App'x at 289 (Am. Compl. at ¶ 58). As a result of FCM's failure, Ortho incurred additional subcontractor fees, and completion of its IT system was delayed by 12 to 18 months.

Ortho thereupon sued FCM, bringing two breach of contract claims (as well as a number of other claims not at issue in this appeal). It charged FCM with: (1) breach of the Engagement Agreement, based on FCM's failure to create a "comprehensive plan for the infrastructure build-out, along with detailed plans for the components of such a plan," Joint App'x at 284 (Am. Compl. at ¶ 35), and (2) breach of the Settlement Agreement, based on FCM's failure to provide "Transition Assistance" in the form of infrastructure plan documents. The District Court dismissed both claims under Rule 12(b)(6). It concluded that Ortho released all of its claims for breach of the Engagement Agreement under the terms of the Settlement Agreement. *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 Civ. 5607 (NRB), 2016 WL 4939370, at *7 (S.D.N.Y. Sept. 12, 2016). It further ruled that the Settlement Agreement did not require FCM to create any infrastructure planning documents, and therefore its failure to provide any such documents did not breach the Settlement Agreement. *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 Civ. 5607 (NRB), 2017 WL 2984023, at *2–3 (S.D.N.Y. July 6, 2017). Ortho appeals both of those decisions.

## II.     Breach of the Engagement Agreement

We do not reach the District Court's conclusion that Ortho released all claims for breach of the Engagement Agreement in the Settlement Agreement, because we conclude that Ortho has failed to plead a claim for breach of the Engagement Agreement at all.[3] The Engagement Agreement required FCM to build an IT system, but contains no provision requiring FCM to develop a comprehensive infrastructure *plan* as a separate deliverable.

---

[3] We may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 648 (2d Cir. 2009) (quoting *Doninger v. Niehoff*, 527 F.3d 41, 50 n.2 (2d Cir. 2008)).

4

Ortho acknowledges as much, but asserts that it "expected" that FCM would prepare such a plan in light of "standard practice in the industry." Joint App'x at 284 (Am. Compl. at ¶ 35), 290 (Am. Compl. at ¶ 62). These allegations are not sufficient to impose on FCM a contractual obligation that lacks support in the parties' contract itself. *See W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."); *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 559–60 (2014). FCM thus did not breach the Engagement Agreement when it failed to create infrastructure plans, however useful such plans might have been.

Ortho contends in the alternative that, notwithstanding the release it effected in the Settlement Agreement, it may bring a breach of contract action against FCM for other breaches of the Engagement Agreement of which it was aware when it entered the Settlement Agreement, so long as it did not know, at that time, the extent of the damages it would suffer in connection with that breach. Spelling out this theory, Ortho argues that it released FCM only for "Claims actually known" by the three specified Ortho executives. Joint App'x at 321. Because the Settlement Agreement defines "Claims" as encompassing "claims, actions, causes of action, suits, obligations, debts, demands, liabilities, *damages*, costs, expenses, and attorneys' fees," Ortho proposes that it did not release any claims to recover *damages*, insofar as the full extent of its damages was not actually known by any of the three executives when it signed the agreement. *Id.* (emphasis added).

We agree with the District Court that Ortho's proposed interpretation of the release in the Settlement Agreement is unreasonable. Ortho's interpretation would mean that Ortho released causes of action against FCM, but did not release "damages" associated with those causes of action—a nonsensical reading. As the District Court observed, "[i]f [Ortho] intended to release only 'claims, actions [and] causes of action' to the <u>extent</u> of 'damages, costs [and] expenses' that one of [the specified Ortho executives] actually knew, 'surely no problem of draftsmanship would have stood in the way of its being spelled out.'" *Ortho-Clinical Diagnostics Bermuda Co.*, 2016 WL 4939370, at *4 (quoting *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 218 (1978)).

5

## III.     Breach of the Settlement Agreement

As to Ortho's claim for breach of the Settlement Agreement, we agree with the District Court that FCM did not breach the Transition Assistance provision of the Settlement Agreement by failing to provide infrastructure plan documents to guide subcontractors during the transition period. Under the terms of the Settlement Agreement, FCM agreed:

> [to] provide [Ortho] and the Successor Providers with all reasonably required assistance necessary to facilitate the transition of responsibility for [the work described in the Engagement Agreement] from FCM to the Successor Providers ("**Transition Services**"). Such Transition Services will include providing information, data, software code, documentation, and access to relevant FCM personnel and answering questions about the services.

Joint App'x at 318.  This provision requires only that FCM "facilitate the transition of responsibility"—that is, fill in gaps based on work already done and hand off the job—to FCM's replacement contractors (the "Successor Providers"), not complete the planning elements of the job. This provision did not require FCM to bring the project to any particular stage of completion before assisting in the job's transition to the Successor Providers. Thus, FCM's obligation to provide "documentation" to Ortho can reasonably be interpreted only as an obligation to provide *existing* documentation to the Successor Providers. The Transition Assistance provision imposed no obligation to create *new* infrastructure plan documents that might guide the Successor Providers in their completion of the project, just as it imposed no obligation on FCM to write *new* code in the course of providing "software code" to Ortho.

Ortho contends that the phrase "reasonably required assistance necessary to facilitate the transition" is best read to include the provision of (even previously non-existent) infrastructure plan documents, because the parties intended for FCM to provide Ortho with plan documents when they entered the Settlement Agreement. But Ortho's allegations regarding its own intentions are insufficient to establish that FCM too intended to assume and knowingly undertook an unstated obligation to create additional infrastructure plan

6

documents. Moreover, when interpreting a contract, we look to evidence of the parties' intentions only if the written text of the agreement is ambiguous. *Shook v. Blue Stores Corp.*, 30 A.D.3d 811, 812 (N.Y. App. Div. 2006). We find no such ambiguity here: the Transition Assistance provision required FCM to provide existing infrastructure plan documents, not to create new infrastructure plan documents for Ortho's benefit.

\* \* \*

We have considered Ortho's remaining arguments and conclude that they too provide no basis for vacating the District Court's judgment. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7