[851 NE2d 1135, 818 NYS2d 784]

In the Matter of MARC GREENBERG, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Argued March 28, 2006; decided May 4, 2006

**POINTS OF COUNSEL**

*Gladstein, Reif & Meginniss, LLP,* New York City (*Margaret A. Malloy* of counsel), for appellant. The Appellate Division's decision is contrary to the plain language of Workers' Compensation Law § 120, directly conflicts with controlling Court of Appeals precedent, and undermines the purposes of Workers' Compensation Law § 120. (*Matter of Aurecchione v New York State Div. of Human Rights,* 98 NY2d 21; *Love v State of New York,* 78 NY2d 540; *Matter of Holcomb v Daily News,* 45 NY2d 602; *McGrath v Toys "R" Us, Inc.,* 3 NY3d 421; *Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y.,* 94 NY2d 398; *Prager v New Jersey Fid. & Plate Glass Ins. Co. of Newark, N.J.,* 245 NY 1; *Mohassel v Fenwick,* 5 NY3d 44; *Matter of Rochester Carting Co. v Levitt,* 36 NY2d 264; *Adventurers Whitestone Corp. v City of New York,* 65 NY2d 83; *Guido v State of New York,* 187 Misc 2d 647.)

*Foley, Smit, O'Boyle & Weisman,* Hempstead (*Warren J. Fekett* of counsel), for New York City Transit Authority, respondent. I. The Appellate Division's decision after review of the facts and law to affirm the Workers' Compensation Board's rejection of prejudgment interest was legally permissible and should therefore be affirmed. (*Bello v Roswell Park Cancer Inst.,* 5 NY3d 170; *Matter of Meloni v Goord,* 267 AD2d 977; *Monessen Southwestern R. Co. v Morgan,* 486 US 330; *Rodgers v United States,* 332 US 371; *Matter of Transit Cas. Co.,* 223 AD2d 488; *Matter of National Farmers Org. v Gerace,* 66 NY2d 719; *Matter of Aurecchione v New York State Div. of Human Rights,* 98 NY2d 21; *Blake v Califano,* 626 F2d 891; *Fischer v Adams,* 572 F2d

406; *Richerson v Jones,* 551 F2d 918.) II. It was legally permissible for the Workers' Compensation Board to decline to entertain an attorneys' fee application not submitted to the Workers' Compensation Law Judge.

**OPINION OF THE COURT**

R.S. Smith, J.

We hold that an award of damages under Workers' Compensation Law § 120 to an employee who has been discharged for claiming or attempting to claim workers' compensation benefits may include predecision interest.

## Facts and Procedural History

Claimant was fired by the New York City Transit Authority in 1994, shortly after making a claim for workers' compensation benefits. The Workers' Compensation Board found that the firing was retaliatory and so violated Workers' Compensation Law § 120. Claimant, reinstated to his job in 1997, asked the Board to award him damages, in the form of back pay for the intervening three years. After an inexplicably long delay, a Workers' Compensation Law Judge held a hearing in 2003, and rendered an award that included $35,469 in interest from the dates claimant's wages should have been paid to the date of the damages hearing. The Judge also awarded claimant attorneys' fees.

The Transit Authority appealed to the Workers' Compensation Board, arguing that the award of interest was not authorized by statute. Claimant defended the Judge's award, and also sought a supplemental award of attorneys' fees for work done after the damages hearing. The Board modified the award to delete the provision for interest, finding no "binding legal authority which authorizes prejudgment interest on awards for damages pursuant to WCL Section 120." The Board rejected claimant's request for an additional attorneys' fee.

The Appellate Division affirmed the Board's decision. We now modify the Appellate Division's order to reinstate the Workers' Compensation Law Judge's award of interest.

## Discussion

Workers' Compensation Law § 120 provides in relevant part:

> "It shall be unlawful for any employer or his or her duly authorized agent to discharge or in any other

manner discriminate against an employee as to his or her employment because such employee has claimed or attempted to claim compensation from such employer . . . .

"Upon finding that an employer has violated this section, the board shall make an order that any employee so discriminated against shall be restored to employment or otherwise restored to the position or privileges he or she would have had but for the discrimination and *shall be compensated by his or her employer for any loss of compensation* arising out of such discrimination together with such fees or allowances for services rendered by an attorney or licensed representative as fixed by the board." (Emphasis added.)

The main question here is whether an order under this section that an employee "shall be compensated . . . for any loss of compensation" may include predecision interest. We hold that it may.

Two recent cases frame the debate. Claimant relies on *Matter of Aurecchione v New York State Div. of Human Rights* (98 NY2d 21 [2002]), which held that the State Division of Human Rights has discretion to award predecision interest on back pay awards for employment discrimination under the Human Rights Law (Executive Law art 15). The Transit Authority relies on *Matter of Bello v Roswell Park Cancer Inst.* (5 NY3d 170 [2005]), which held that back pay awards under Civil Service Law § 77 may not include predecision interest. We recognized in both of these cases that the authority for such interest awards must be found in statutes; we decided that the statute in *Aurecchione* granted that authority, but that the statute in *Bello* did not. We conclude that the present case is closer to *Aurecchione* than to *Bello*, because Workers' Compensation Law § 120 is, in relevant ways, more similar to the Human Rights Law than to Civil Service Law § 77.

Section 120 is, like the Human Rights Law, an antidiscrimination statute. And like the Human Rights Law, section 120 "evinces a legislative intent to compensate fully victims of . . . discrimination" (*Aurecchione*, 98 NY2d at 25). The Human Rights Law provides for the "awarding of compensatory damages" to victims (Executive Law § 297 [4] [c] [iii]). Section 120 uses similar language: a victim "shall be compensated . . . for any loss of compensation." Section 120 also includes other

language showing a generalized intention to undo harm done: victims are to be "restored to the position or privileges [they] would have had but for the discrimination."

Civil Service Law § 77 is a different kind of statute. It provides that an employee fired in violation of the Civil Service Law "shall be entitled to receive and shall receive . . . the salary or compensation which he would have been entitled by law to have received . . . less the amount of any unemployment insurance benefits he may have received." As we explained in *Bello* (5 NY3d at 173):

> "The statute does not just create a general right to 'compensation'; it is specific about what a claimant 'shall be entitled to receive.' It speaks of 'salary *or* compensation'—indicating that 'compensation' refers to bonuses or other nonsalary forms of payment. It provides for the deduction of unemployment insurance benefits. . . . We conclude that a legislature giving such careful attention to the components of a back pay award would have added the words 'with interest' if it had intended interest to be awarded."

Workers' Compensation Law § 120, by contrast, does create a "general right to 'compensation.' " It does not specifically list what a claimant is entitled to receive, and does not use "compensation" in the narrow sense of nonsalary payment. From the text of section 120, it does not seem that the Legislature that enacted it was "giving . . . careful attention to the components of a back pay award." It seems rather that the Legislature was making a general statement that victims of discrimination should be made whole.

Two other factors we relied on in *Bello* are also absent here. Awards under Civil Service Law § 77, unlike those under Workers' Compensation Law § 120, are not reduced by the amounts claimants earn in other employment—so that Civil Service Law claimants, though they are denied predecision interest, may often receive more than the principal amount of their actual loss (*see Bello*, 5 NY3d at 173-174). And Civil Service Law § 77 specifically addresses recoveries against the State, raising sovereign immunity concerns that made us hesitant, in *Bello*, to find an implied right to the recovery of interest (*id.*).

For these reasons, we hold that predecision interest awards are permissible under Workers' Compensation Law § 120. Our

holding is limited to that section; we by no means suggest that predecision interest should be recoverable on workers' compensation awards generally. Despite the name of the Workers' Compensation Law, most of its provisions are designed not to make workers whole for the losses they may have suffered, but to provide for each injury a specified "money allowance" (Workers' Compensation Law § 2 [6]) that bears no necessary relationship to full compensation. Interest on ordinary workers' compensation awards is governed by statutes that specifically address the question, and provide for postdecision interest only (Workers' Compensation Law § 20 [1]; § 24).

The dissent contends that section 20 (1) also governs the availability of interest on awards under section 120 (dissenting op at 145, 146, 148). A reading of section 20 (1) will show, however, that this interpretation is untenable. Section 20 (1), derived from a section of the original Workmen's Compensation Law enacted in 1913 and amended to include the interest provision in 1925, is explicitly and solely concerned with claims based on a worker's death or disability. It sets out a procedure for the determination of such claims, beginning with presentation of the claim "[a]t any time after the expiration of the first seven days of disability . . . or at any time after the employee's death." It makes no reference to claims based on retaliatory discharge or other forms of discrimination. There is simply no way to apply section 20 (1) to claims under section 120, an antidiscrimination statute passed in 1973.

The dissent also suggests that the definition of "compensation" in Workers' Compensation Law § 2 (6)—"the money allowance payable to an employee or to his dependents as provided for in this chapter"—is applicable to the use of "compensation" in section 120 (dissenting op at 148-149). This suggestion, like the dissent's interpretation of section 20 (1), cannot be right. If the statutory definition of "compensation" is read into section 120, the statute does not make sense.

Nor does the dissent's analysis of the legislative history of section 120 persuade us that the section was not designed to make workers whole. Section 120 provides, with seeming redundancy, that a victim of discrimination shall be "compensated . . . for any loss of compensation." The dissent is no doubt right that the noun, "compensation," introduced into the statute by a 1987 amendment, was intended as a broader counterpart to the former term, "wages" (dissenting op at 146-148). But the dissent offers no reason to think that the verb, "shall be

compensated," which was contained in the 1973 version of section 120, means anything but what it says. The combination of the noun and the verb, and the language in the statute authorizing equitable relief, show an intention to make victims whole. Nothing in the legislative history cited by the dissent contradicts that intention.

■ Finally, we reject claimant's argument that he is entitled to a supplemental attorneys' fee. The Board had discretion to require, as it did, that any request for a fee—even a prospective request, for work to be performed after the damages hearing—be first presented to the Workers' Compensation Law Judge.

Accordingly, the order of the Appellate Division should be modified to provide that the Workers' Compensation Law Judge's award of $35,469 in interest is reinstated, and as so modified affirmed, with costs to claimant.

READ, J. (dissenting). Section 20 of the Workers' Compensation Law specifies that "[e]xcept as provided in section twenty-seven of this article, all awards of the board shall draw simple interest from thirty days after the making thereof" (Workers' Compensation Law § 20 [1]). Thus has the Legislature plainly negated the predecision interest for which the majority principally finds warrant in the Human Rights Law and our decision in *Matter of Aurecchione v New York State Div. of Human Rights* (98 NY2d 21 [2002]). Accordingly, I respectfully dissent. I would affirm the decisions of the Workers' Compensation Board and the Appellate Division.

Hailed as a "notable measure . . . which will put a great burden on the employer and will launch an experiment in state insurance" (Talley, *New York Workmen's Compensation Act Very Radical*, New York Times, Dec. 28, 1913, section 5, at 10), the Workers' Compensation Law took effect on January 1, 1914. In the intervening years, this important statute has been the object of constant legislative attention and fine-tuning. Indeed, between 1914 and 1961, when former Governor Nelson A. Rockefeller appointed a blue-ribbon committee to review the status of workers' compensation in New York, the Legislature amended the law a remarkable 560 times (Governor's Workmen's Compensation Review Committee, Review of Workmen's Compensation in New York State, at 19 [Dec. 1962]). Legislative interest has hardly waned in the 45 years since 1961 (*see e.g.* Omnibus Workers' Compensation Reform Act of 1996 [L 1996,

ch 635]). The result is a complex, integrated and unusually prescriptive statute, which we have historically interpreted by looking solely at its particular language, context and legislative history, even though we have surely sometimes disagreed about the answer yielded by this analysis. In this case, the language, context and legislative history of sections 20 and 120 of the Workers' Compensation Law support the conclusion reached by the Workers' Compensation Board and the Appellate Division; namely, that predecision interest is not available under section 120.

Originally, the only provision in the Workers' Compensation Law addressing interest was section 24, which specified that an award subsequently affirmed by the Appellate Division was payable with interest from the date made (L 1917, ch 705). In 1925, the Legislature established a special committee to investigate alleged delays in the settlement and payment of compensation and death benefits to employees and their dependants under the Workers' Compensation Law. The committee found that some delays were attributable to the withdrawal of appeals before perfection:

> "While there is no actual proof to the effect that appeals have been taken to the courts merely for the purpose of delaying compensation[,] the testimony shows that at least seventy-five percent of the appeals are withdrawn. If an appeal is sustained by the court[,] the award draws interest from the date of the award by the board.[1] If an appeal is withdrawn and compensation paid, no interest is added" (1925 NY Legis Doc No. 80, at 8).

To reduce any incentive for unnecessary appeals and thus cut down on delays from this cause, the Committee recommended amending the Workers' Compensation Law "to provide that awards for compensation should bear interest beginning thirty days after the date of the award. To compute interest beginning at an earlier period in all cases would be impractical" (id.). The Legislature enacted this "simple addition" to section 20 in 1925 (see Comment from NY St Fedn of Labor, Bill Jacket, L 1925, ch

---

**1.** At that time, the "board" was the Industrial Board of the New York State Department of Labor. The Workers' Compensation Board took over the administration of the Workers' Compensation Law from the Industrial Board in 1945 (see Workers' Compensation Law § 154; Minkowitz, Practice Commentaries, McKinneys Cons Laws of NY, Book 64, Workers' Compensation Law § 154, at 397).

660). In 1939, the Legislature amended section 20 to except awards under section 27 from the direction to pay interest beginning 30 days after the date of the award by the board (*see* L 1939, ch 937, § 2).[2] This is the only exception to the 30-day rule enacted by the Legislature since 1925.

In 1973, the Legislature added section 120 to the Workers' Compensation Law. Modeled after an amendment made by Congress to the Longshore and Harbor Workers' Compensation Act the previous year (*see* 33 USC § 948a, as added Oct. 27, 1972 by Pub L 92-576, § 19), section 120 made it unlawful for an employer "to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify" (L 1973, ch 235, § 1) in a workers' compensation proceeding. The wronged employee's remedies were limited to restoration to employment and compensation for lost wages. The purpose of this legislation was to "insure[ ] that a claimant can exercise his rights . . . without fear that doing so may endanger the continuity of employment" (Mem of Indus Commr, Bill Jacket, L 1973, ch 235).[3]

Recognizing that section 120 was, in some ways, "not now carefully drawn," in 1987 the Workers' Compensation Board recommended amending it (*see* Mem of State Workers' Compensation Board, 1987 McKinney's Session Laws of NY, at 2459). The Legislature subsequently struck the language in section 120 limiting a wronged employee's remedies to reinstatement and compensation for lost wages, and replaced it with the instruction, which continues to be the law, that:

> "any employee [discriminated against in violation of section 120] shall be restored to employment or otherwise restored to the position or privileges he or she would have had but for the discrimination and

---

**2.** Section 27 of the Workers' Compensation Law allows the Board to permit or require an employer or its carrier to pay the present value of certain kinds of awards into an aggregate trust fund established by that provision. In 1939, the Legislature amended section 27 to specify when and how and at what rate interest was payable in the event of a review or appeal of any such award the value of which had not been paid into the fund (*see* L 1939, ch 937, § 1).

**3.** Section 120 also authorized the Board to impose a penalty between $100 and $500 against an employer in violation of its provisions. The employer is individually liable to pay the penalty.

shall be compensated by his or her employer for any loss of compensation arising out of such discrimination."

This language was drafted by the Workers' Compensation Board. The Board explained the revision as necessary because

"[w]hile [section 120] prohibits discrimination other than discharge, it does not provide remedies other than reinstatement and back wages. Thus, if an employee were demoted or transferred, no equitable relief would be possible. If the employee were terminated and lost fringe benefits (e.g. medical insurance) as well as back pay, no compensation for lost benefits would be possible. This legislation would allow the Workers' Compensation Board to restore the employee discriminated against to employment, and/or to restore the employee to the position or privileges he or she would have had but for the discrimination" (see July 21, 1987 Letter to Governor's Counsel from General Counsel of Workers' Compensation Bd, Bill Jacket, L 1987, ch 436).

In sum, section 120 is not a stand-alone statute. It is part of the Workers' Compensation Law, which in section 20 makes interest payable 30 days after an award by the Board, not from some earlier point in time. If the Legislature had wanted to except section 120 from the generally applicable rule in section 20, it would have done so explicitly as it did in the case of section 27.

Additionally, context and legislative history contradict any suggestion that the Legislature intended section 120 to make predecision interest available to an aggrieved employee. The majority acknowledges that the Workers' Compensation Law was never designed to make workers whole for losses suffered (majority op at 144). Indeed, "compensation" is defined specifically and narrowly for purposes of the statute generally (see Workers' Compensation Law § 2 [6]). The majority ignores this, although we have, in the past, interpreted a term in the Workers' Compensation Law with reference to its meaning in unrelated provisions elsewhere in the statute (see Rubeis v Aqua Club, Inc., 3 NY3d 408 [2004] [whether a brain injury results in "permanent total disability" under Workers' Compensation Law § 11 must be considered within larger context of Workers' Compensation Law where customary definition of "disability" generally refers to inability to work]). Because "compensation"

does not include predecision interest within the larger context of the Workers' Compensation Law, the natural inference is that, if the Legislature had intended section 120 to make this uncustomary element of compensation available, it would have said so directly. The Legislature that enacted and amended section 120 could not have anticipated that the courts would imply a right to predecision interest solely from its use of the words "compensation" and "compensated," and by analogy to the Human Rights Law and *Aurecchione,* a case decided only a few years ago.

Indeed, section 120's legislative history strongly supports the Workers' Compensation Board's position on this appeal. Notably, the critical language directing that an aggrieved employee "shall be restored to employment or otherwise restored to the position or privileges he or she would have had . . . and shall be compensated . . . for any loss of compensation" was drafted by the Board, and enacted by the Legislature without revision (*compare* 1987 NY Senate-Assembly Bill S 2702, A 7313 *with* 1987 NY Senate-Assembly Bill S 2702-A, A 7313-A). The Board explained this wording as intended to fulfill two specific purposes. The first was to restore positions or privileges denied to employees who were discriminated against in some way in their employment, but who did not lose their jobs. For these employees, the remedies in the statute as originally enacted—reinstatement and back pay—were pointless. Second, the Board wanted to make sure that employees who were, in fact, terminated were compensated for any lost benefits in addition to lost wages. These purposes dispel any notion that "compensated" and "compensation" implicitly encompass predecision interest (*see* Letter to Governor's Counsel from General Counsel of Workers' Compensation Bd, *supra*).

Finally, as the Appellate Division noted, it is highly significant that the Workers' Compensation Board has consistently taken the position that predecision interest is not an element of the compensation available under section 120 (*see* 16 AD3d 764, 764-765 [3d Dept 2005], citing *Matter of Mount Vernon Hosp.,* 95 NY WCLR 1197 [1995]). While we usually owe no deference to an administrative agency in matters of statutory interpretation, in this instance the agency actually drafted the relevant statutory language and explained what it meant to accomplish by its choice of words, which the Legislature then enacted without revision.

The majority nonetheless holds that "predecision interest awards are permissible under Workers' Compensation Law

§ 120" (majority op at 143) principally by analogy to the Human Rights Law and our decision in *Aurecchione*. In *Aurecchione*, we decided that the State Division of Human Rights has discretion to award predetermination interest on back pay awards for employment discrimination by a private employer even though the statute makes no specific reference to this remedy. Our decision was based on two grounds, both absent here. First, we observed that "[t]he remedial nature of the [Human Rights Law] evinces a legislative intent to compensate fully victims of employment discrimination" (*Aurecchione*, 98 NY2d at 25), and that, concomitantly, Executive Law § 300 "explicitly mandated" a "liberal reading of the statute . . . to effectuate [its] intent" (*id.* at 26). By contrast, the Legislature has expressed no similar intention to make workers whole under the Workers' Compensation Law generally or section 120 in particular; the Legislature has by no means and nowhere enjoined the courts to give a "liberal reading" to the detailed and often heavily negotiated provisions of the Workers' Compensation Law.

Second, we noted the similarities between the Human Rights Law and its federal counterpart, title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*), which the United States Supreme Court has interpreted to permit predetermination interest despite the absence of any reference to this relief in the statutory text, and our policy "to resolve federal and state employment discrimination claims consistently" (*Aurecchione*, 98 NY2d at 25; *see also McGrath v Toys "R" Us, Inc.*, 3 NY3d 421, 429 [2004] ["Where our state and local civil rights statutes are substantively and textually similar to their federal counterparts, our Court has generally interpreted them consistently with federal precedent"], citing *Aurecchione*; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295 [2004]; *Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326 [2003]; and *Ferrante v American Lung Assn.*, 90 NY2d 623 [1997]). The Workers' Compensation Law is, of course, not a civil rights statute, and has no federal analogue.

Two final points merit mentioning. Section 120 states that an employee "*shall* be compensated . . . for any loss of compensation" (emphasis added). Consequently, if the words "compensated" and "compensation" implicitly comprehend predecision interest, the Board presumably has no discretion to deny an aggrieved employee this relief. The majority fudges this issue, creating unnecessary uncertainty. The majority never explains whether an award of predecision interest is mandatory or

whether the Board simply abused its discretion by not awarding predecision interest in this instance.

Finally, the majority remarks upon the "inexplicably long delay" in awarding back pay in this case (*see* majority op at 141). There is no doubt that the seven-year time lag between claimant's reinstatement and the Board's decision with respect to his back pay award seems egregious. The record does not disclose what caused this hiatus, although there is surely no reason to lay the blame on claimant. We also have no way to know whether the delay here was atypical or commonplace. In any event, that this claimant may have been treated unfairly does not give us license to "rewrite the statute to achieve more 'fairness' than the Legislature chose to enact" (*Matter of Bello v Roswell Park Cancer Inst.*, 5 NY3d 170, 173 [2005]).

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and ROSENBLATT concur with Judge R.S. SMITH; Judge READ dissents in a separate opinion in which Judge GRAFFEO concurs.

Order modified, etc.