*478 Order, Supreme Court, New York County (Edward H. Lehner, J.), entered March 5, 2009, which, in an action commenced by plaintiff city employee pursuant to Civil Service Law § 75-b, after a nonjury trial, awarded plaintiff $175,000 in back pay without interest, unanimously modified, on the law, to the extent of ordering defendants to reinstate plaintiff to the same position held by him before the retaliatory personnel action, or to an equivalent position, and remanding the matter to Supreme Court to recalculate the award in accordance with this order, and otherwise affirmed, without costs.
In August 1996, plaintiff, a long-time manager with the New York City Department of Transportation (DOT), was promoted to the position of Acting Assistant Commissioner for Planning. At the time of the promotion, plaintiff was earning a salary of $55,000 and was told that he would receive a $25,000 increase if the position became permanent. He was also informed that the permanent position would carry a managerial pay plan class of M4, as compared to the Ml class attached to the acting title. In February 1997, plaintiff was demoted from the new position. As previously determined by this Court, the demotion was in retaliation for plaintiff’s having reported to the Department of Investigation that a superior violated bidding rules (see 48 AD3d 361 [2008]). Because he was demoted, the new position never became permanent and he never received the $25,000 increase. This appeal is from an order following a nonjury trial on the issue of damages.
At the trial, plaintiff called an economics expert to establish the amount of back pay to which he was entitled. The expert’s analysis assumed that, had he not been demoted, plaintiff would have been permanently named to the position of Assistant Commissioner for Planning and received the $25,000 raise. Thus, the expert assumed that plaintiff would have been making $81,000 at the time he was demoted. To calculate the amount of money plaintiff would have earned through the time of trial had he not been demoted, the expert compared plaintiff to two other managers who she asserted were similarly situated to plaintiff and who were earning, at the time of trial, an average of $143,500. Attributing this number to plaintiff, and extrapolat *479 ing through the 10 years lost by plaintiff as a result of his demotion, the expert testified that plaintiff lost $388,243 in earnings as a direct result of the retaliatory actions taken by defendants. The expert further testified that, applying the statutory interest rate of 9% to the lost earnings, plaintiff was owed a total of $662,721.
Supreme Court, without any explanation for how it arrived at the figure, awarded plaintiff $175,000 in back pay. It denied his request for predetermination interest, finding that neither of the two statutes upon which plaintiff relied, Labor Law § 740 and CPLR 5001 (a), provide for interest on a back-pay award. The court did not directly address plaintiffs claim for consequential damages and reinstatement to his original position or a position equivalent thereto.
We disagree with the amount of back pay awarded by the court and with its decision not to award predetermination interest or reinstatement. The back pay award calculated by plaintiffs expert had ample support. The salary the expert assumed plaintiff would have earned had he been promoted on a permanent basis was based on plaintiffs credible and unchallenged testimony that he would have received a $25,000 raise if the promotion had become permanent. Indeed, additional evidence confirms that plaintiff was likely to have received the raise. For example, the report by the Department of Investigations which concluded that plaintiff had been the victim of retaliation, stated that, according to the DOT Director of Personnel, “if an Assistant Commissioner position is eventually posted, the person in the ‘acting’ status, also known as a ‘provisional,’ usually receives the permanent appointment and a salary increase.”
Defendants argue that the $25,000 raise was rejected by Richard Malchow, the DOT Deputy Commissioner who co-orchestrated plaintiffs demotion, before plaintiff reported the unlawful bid-rigging. Defendants base this theory on the written report of an interview with Joan McDonald, who allegedly promised the raise. The report, prepared on February 13, 1997, after plaintiffs demotion, does state that Malchow rejected the raise. However, it does not state when he rejected the raise, and the report can just as easily be read as reflecting a statement by McDonald that Malchow rejected the raise at a time after plaintiff accused him of improper behavior.
Defendants also assert that it is unrealistic that plaintiff would have been given a raise of $25,000, because it would have resulted in his earning a salary that was only approximately $1,200 less than the salary being earned at the time by his im *480 mediate supervisor. However, plaintiff neutralizes this argument by demonstrating that the result of his not receiving the increase was that his own subordinates were earning more than he was.
Defendants also object to the use of the two “comparators” employed by plaintiffs expert to calculate how much plaintiff would have made but for the adverse job action. We conclude, however, that the comparators were appropriate because they were “similarly situated in all material respects” to plaintiff (see Shumway v United Parcel Serv., Inc., 118 F3d 60, 64 [2d Cir 1997]). Both comparators had qualifications similar to plaintiffs insofar as they are licensed engineers and were made Assistant Commissioners in 2001. If anything, plaintiff is more qualified than the comparators by virtue of his doctoral degree. Defendants maintain that comparator Jay Jaber’s salary history is a poor projector of what plaintiffs trajectory would have been because Jaber testified that, when he received his promotion to manager, he was given an inflated salary intended to make up for extensive overtime pay he had earned in his previous position, and for which he would be ineligible as a manager. However, Jaber also testified that he continues to work overtime hours as a manager to nearly the same extent as his previous position (albeit for which he is not paid), despite assurances he had received that as a manager his hours in the office would be reduced. This undermines defendants’ position that Jaber’s increase in salary when he became a manager was not a straightforward raise to which plaintiff would also have been. entitled.
Finally, we note that defendants chose not to call their own expert to offer an alternative theory of the earnings which plaintiff would have lost had he not been the victim of retaliation, or to explain why plaintiffs expert’s analysis was flawed in any respect. Accordingly, the only expert opinion before us is plaintiffs, and we see no reason to disturb it.
We also find that Supreme Court erred in not awarding plaintiff predetermination interest. Plaintiff commenced this action pursuant to Civil Service Law § 75-b. This provides that a public employee may not be disciplined for reporting an actual or perceived violation of law and that, if he or she is indeed so disciplined, he or she may commence an action “under the same terms and conditions as set forth in article twenty-C of the labor law” (which governs retaliatory actions, against whistle-blowers by private employers) (Civil Service Law § 75-b [3] [c]). Labor Law § 740 (5), in turn, states that
“[i]n any action brought pursuant to subdivision four of this section, the court may order relief as follows:
*481 “(a) an injunction to restrain continued violation of this section;
“(b) the reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position;
“(c) the reinstatement of full fringe benefits and seniority rights;
“(d) the compensation for lost wages, benefits and other remuneration; and
“(e) the payment by the employer of reasonable costs, disbursements, and attorney’s fees.”
Interest is not specifically enumerated in that section as an element of compensation. However, that does not end the analysis. As the Court of Appeals has held, one must look to the legislative intent underlying the statute to determine whether interest was meant to be available (see Matter of Aurecchione v New York State Div. of Human Rights, 98 NY2d 21 [2002]).
In Aurecchione, the plaintiff prevailed in an employment discrimination action commenced under the Human Rights Law. That statutory scheme, like Labor Law article 20-C, does not expressly provide that a back-pay award must include prejudgment interest. However, the Court recognized that “[t]o ensure the protection of [the right to obtain employment without discrimination] the Legislature enacted a comprehensive statutory scheme that provides employees with both the means to combat employment discrimination and a framework for redress. The remedial nature of the statute evinces a legislative intent to compensate fully victims of employment discrimination” (98 NY2d at 25). The Court then analogized the Human Rights Law to title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.), which it noted addresses the same type of discrimination targeted by the Human Rights Law, and which federal courts have concluded permits recovery of prejudgment interest despite silence in the statute. For example, the Aurecchione court cited Loeffler v Frank (486 US 549 [1988]), in which the United States Supreme Court stated that “[t]he backpay award authorized by § 706(g) of Title VII. . . is a manifestation of Congress’ intent to make persons whole for injuries suffered through past discrimination” and that “[p]rejudgment interest, of course, is an element of complete compensation” (486 US at 558 [internal quotation marks and citations omitted]). As further noted by the Court of Appeals in Aurecchione, “the Second Circuit has consistently held that ‘[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, “it is ordinarily an abuse of discretion not to include *482 pre-judgment interest” ’ ” (Aurecchione at 26, quoting Gierlinger v Gleason, 160 F3d 858, 873 [2d Cir 1998], quoting Saulpaugh v Monroe Community Hosp., 4 F3d 134, 145 [2d Cir 1993], cert denied 510 US 1164 [1994]). The Aurecchione court concluded that a plaintiff who prevails in a discrimination lawsuit brought under the Human Rights Law is also entitled to prejudgment interest, because, like title VII, “a central concern of the Human Rights Law is to make such victims whole” (98 NY2d at 26 [internal quotation marks and citation omitted]).
Finally, the Aurecchione court declined to extend its holding to every discrimination case, allowing that the Commissioner of the New York State Division of Human Rights has some discretion in setting compensation in discrimination cases, subject to appellate review for abuse (98 NY2d at 27). In other words, an appellate court considering whether interest should have been awarded in an employment discrimination case must determine whether there was some rational basis in the record to support the award. As discussed below, we find that Labor Law § 740 is analogous to the Human Rights Law for purposes of compensation, and that Aurecchione therefore supports plaintiffs position that predetermination interest generally applies to claims under Civil Service Law § 75-b. Accordingly, we must also determine whether, on this record, such an award is warranted.
Like the Human Rights Law, Civil Service Law § 75-b has the goal of remediating adverse employment actions which, if allowed, would undermine an important public policy, that is, encouraging public employees to expose fraud, waste and other squandering of the public fisc. It makes no sense that the Legislature would have intended victims of employment discrimination to be made “whole” through an award of prejudgment interest, but not whistleblowers like plaintiff. Moreover, we do not read Labor Law § 740 (5) (d), which provides “compensation for lost wages, benefits and other remuneration,” as affording a narrower form of relief than Executive Law § 297 (4) (c) (iii), which provides for “compensatory damages.” Further, the fact that the former statute also permits recovery of “reasonable costs, disbursements, and attorney’s fees” (Labor Law § 740 [5] [e]) confirms that the Legislature did indeed intend to make prevailing plaintiffs “whole.” Denying predetermination interest would conflict with that obvious goal.
Defendants’ reliance on Matter of Bello v Roswell Park Cancer Inst. (5 NY3d 170 [2005]), is misplaced. Bello involved public employees who prevailed in an action in which they alleged that they were unlawfully laid off. They sought back pay, with inter *483 est, pursuant to Civil Service Law § 77. That section provides that a person unlawfully removed from, and then restored to, his position, “shall receive . . . the salary or compensation which he would have been entitled by law to have received in such position but for such unlawful removal, from the date of such unlawful removal to the date of such restoration.” The Court of Appeals found that the relief described in the statute did not include interest. The Court held that the statute did not provide a general right to compensation, stressing that the statute specified that a person aggrieved by a violation was entitled to receive only “salary or compensation” (5 NY3d at 173). Like the statutes at issue in Aurecchione and in Matter of Greenberg v New York City Tr. Auth. (7 NY3d 139, 142 [2006] [holding that Workers’ Compensation Law § 120 provides prejudgment interest to workers retaliated against for filing claims since the section “evinces a legislative intent to compensate fully victims of . . . discrimination” (internal quotation marks and citation omitted)]), and unlike the statute at issue in Bello, Labor Law § 740 (5) creates a “general right to compensation” (7 NY3d at 143 [internal quotation marks omitted]).
Also, contrary to defendants’ contention, this Court’s decision in Scaduto v Restaurant Assoc. Indus. (180 AD2d 458 [1992]) does not compel a different result from the one reached herein. The sole issue in Scaduto was whether Labor Law § 740 (5) entitles a plaintiff to have a jury determine damages in connection with an adverse employment action taken by a private employer against a whistleblowing employee. This Court found that a jury was not available because section 740 (5) explicitly states that “the court may order” the available relief (180 AD2d at 459). We further observed that, in contrast to Executive Law § 297 (4) (c) (iii), which, again, provides simply for “compensatory damages,” the relief set out by Labor Law § 740 (5) is equitable in nature. Scaduto did not attempt to answer the entirely unrelated question, however, of whether the purpose of Labor Law § 740 (5) is to make plaintiffs whole, such that an interest award would be appropriate.
Based on the foregoing, we hold that predetermination interest is generally available to whistleblowers who claim under Civil Service Law § 75-b. We further find that, under the specific circumstances of this case, where defendants have offered no “justification for the denial of pre-determination interest,” it was an abuse of discretion for Supreme Court not to make an interest award (Aurecchione, 98 NY2d at 27). Because we find that plaintiff is entitled to an interest award under Civil Service Law section 75-b, we need not, and do not, decide whether such an award is also authorized by CPLR 5001.
*484 Finally, we find that the record supports plaintiffs request that he be reinstated “to the same position held before the retaliatory personnel action, or to an equivalent position” (Labor Law § 740 [5] [b]). Plaintiffs decisions in 2000, 2001 and 2002 to decline promotions do not militate against reinstatement now. That is because the undisputed testimony of his current supervisor was that, at the time of the offers, plaintiff continued to fear that any promotion would be met with retaliatory action by defendants.
We have considered plaintiffs other contentions and find them unavailing. Concur—Mazzarelli, J.E, McGuire, DeGrasse, Freedman and Richter, JJ.