This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 143
John Tipaldo,
          Respondent,
        v.
Christopher Lynn, &c., et al.,
          Appellants.


          Marta Ross, for appellants.
          Lewis Rosenberg, for respondent.


ABDUS-SALAAM, J.:

          In this whistleblower action, we are faced with two issues: First, whether plaintiff John Tipaldo made a good faith effort to comply with the reporting requirements of Civil Service Law § 75-b (2) (b); and second, whether prejudgment interest is available under Civil Service Law § 75-b and Labor Law § 740 (5). For the reasons that follow, we hold that plaintiff made a good faith effort to comply with the statute, and that prejudgment

- 1 -

interest is available in actions of this kind.

I.

Plaintiff was employed by New York City's Department of Transportation (DOT) and served as the DOT's Acting Assistant Commissioner for Planning and Engineering. He was apparently promised that at some point that position would become permanent and be accompanied by a significant pay increase. While he held that position plaintiff supervised the Queensborough Bridge Project which involved procuring a variety of street signs, including "don't honk" signs to advise motorists of possible fines. Plaintiff discovered an alleged scheme by his superiors, defendants Christopher Lynn, then-Commissioner of the DOT, and Richard Malchow, then-First Deputy Commissioner of the DOT, to award a signage contract to Lynn's acquaintance in violation of the City's public bidding rules. The day after placing an order for the signs from Lynn's acquaintance on November 6, 1996, a meeting was held informing DOT employees, including Tipaldo, that the signs had been purchased. According to plaintiff, he and other employees questioned the legality of the process and the DOT employees whose signatures were required to authorize the purchase refused to sign the authorization. The following day, November 8, Lynn and Malchow then solicited bids from the public. Following the delivery and installment of the signs, the DOT received several lower bids compared to the $6,000 paid to Lynn's

acquaintance.  Defendants thereafter allegedly created a backdated memorandum stating that the need for the signs was "urgent" and that the order must be placed immediately, rather than go through the bidding process.

Plaintiff informed his immediate supervisors about defendants' alleged misconduct.  One or two business days later, plaintiff reported defendants' alleged actions to the Office of the Inspector General for the DOT and requested an investigation.  Plaintiff claims that shortly after filing his report with the Inspector General, Lynn and Malchow retaliated against him by excluding him from meetings, removing him from supervising and managing several projects, and publicly making negative comments about him.  Eventually, plaintiff was removed from his position and demoted.

Plaintiff then commenced this action in 1997 pursuant to Civil Service Law § 75-b.  He alleged that he was retaliated against for reporting improper governmental activity and sought a permanent injunction, reinstatement, all lost compensation, punitive damages, attorney's fees, and costs.  Defendants moved for summary judgment dismissing the complaint, arguing that plaintiff failed to comply with Civil Service Law § 75-b by not reporting the allegedly wrongful actions to the appointing authority (which under these facts were defendants) before contacting the Inspector General's office.  Plaintiff cross-moved

for summary judgment on liability.[1]

Supreme Court granted defendants' motion for summary judgment, denied plaintiff's cross motion, and dismissed the complaint. The court agreed with defendants that plaintiff failed to state a cause of action by not reporting the defendants' alleged misconduct to an appointing authority. On appeal, the Appellate Division reversed, and granted plaintiff's motion for summary judgment, stating, "[t]here is no dispute that retaliatory actions were taken against plaintiff, and although a cause of action pursuant to the subject statute requires plaintiff to have first reported the alleged violation to the internal [DOT] 'appointing authority,' here, that was defendants" (48 AD3d 361, 361-362 [1st Dept 2008] [internal citation omitted]). The court determined that "plaintiff's good faith efforts in the manner and filing of his reporting, first informally to his immediate supervisors, and then soon thereafter to the [DOI], satisfactorily met the requirements of Civil Service Law § 75-b (2)" (id. at 362).

_____

[1]     Meanwhile, following an investigation, the Inspector General issued his determination, concluding that plaintiff "suffered an adverse personnel action taken in retaliation for his having reported to the [DOI] information concerning conduct which he knew or reasonably believed to involve an abuse of authority on the part of another City official." The report recommended that plaintiff be reinstated to his former position or a comparable position. Defendants initially declined to reinstate plaintiff, but later issued an order of compromise, pursuant to CPLR 3221, offering to reinstate him to a comparable position with back pay and benefits, which plaintiff rejected.

Thereafter, a bench trial on damages was conducted. Plaintiff's expert Dr. Anne Bynoe testified, concluding that if plaintiff had not been demoted, he would have been permanently appointed to Assistant Commissioner for Planning, receiving a $25,000 raise, amounting to an $81,000 salary at the time of demotion. Using the salary information of two comparators (DOT managers that Dr. Bynoe determined were similarly situated to plaintiff in experience and job responsibilities), Dr. Bynoe concluded that over the 10 years since plaintiff's demotion, plaintiff lost approximately $388,243 in earnings, or $662,721 with 9% statutory interest. Defendants did not present any evidence to refute Dr. Bynoe's conclusions.

Supreme Court then directed judgment to be entered in favor of plaintiff. However, the court denied plaintiff's claim for interest, stating that "neither C[ivil] S[ervice] L[aw] § 75-b nor Labor Law § 740 makes any provision for interest." The court directed that defendants pay plaintiff $175,000, rather than the amount computed by Dr. Bynoe.

The Appellate Division modified the judgment and, as so modified, affirmed (76 AD3d at 477 [1st Dept 2010]). The court determined that Supreme Court failed to explain how it calculated the award and did not address plaintiff's requests for consequential damages or reinstatement to an equivalent position. The court determined that the only expert opinion before it was plaintiff's, and it saw no reason to disturb Dr. Bynoe's

conclusions on the back pay owed to plaintiff based upon the raise he was to receive with the anticipated promotion.  The court determined that Labor Law § 740 (5) allows whistleblower plaintiffs who sue under Civil Service Law § 75-b to seek prejudgment interest, because the purpose of Civil Service Law § 75-b is to "remediat[e] adverse employment actions which, if allowed, would undermine an important public policy, that is, encouraging public employees to expose fraud, waste and other squandering of the public fisc" (id. at 482).  Additionally, the court ordered defendants to reinstate plaintiff to the same or equivalent position he held before the retaliatory personnel action.

Supreme Court then entered a judgment awarding plaintiff $388,243.00 in back pay, $274,478.00 in interest, $152,521.81 in attorney's fees, and $985.00 in costs.  The judgment also directed defendants to promote plaintiff to an Assistant Commissioner position, with a salary of $157,000, effective August 24, 2010.  This Court granted defendants' motion for leave to appeal from the judgment, bringing up for review the prior non-final 2008 and 2010 Appellate Division orders.  We now affirm.

II.

The first issue is whether plaintiff complied with Civil Service Law § 75-b, the State whistleblower statute.

Civil Service Law § 75-b provides that adverse employment action may not be taken against a public employee based upon his or her disclosure of information "which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."  "Improper governmental action" is defined as:

> "any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation"

(Civil Service Law § 75-b [2] [a]).  Prior to reporting what may be "improper governmental action," an employee is to make "a good faith effort to provide the appointing authority or his or her designee the information to be disclosed and shall provide the appointing authority or designee a reasonable time to take appropriate action unless there is serious or imminent danger to the public health or safety" (Civil Service Law § 75-b [2] [b]). An "appointing authority" is the "officer, commission or body having the power of appointment to subordinate positions" (Civil Service Law § 2 [9]).  Based upon the legislative history, the purpose of the reporting requirement was to allow the employer the opportunity to cease the violations by providing internal notice prior to disclosing misconduct to an outside agency (see Budget Report, Bill Jacket, L 1984, ch 660, at 7).  Following the report of a complaint to the appointing authority, pursuant to a

New York City Mayoral Executive Order, it is the authority's obligation to report the alleged improper governmental action to the Department of Investigation (see Executive Order § 16 [3] [d]).  The Executive Order also requires an employee to immediately report misconduct or face disciplinary action, including possible termination.

Because plaintiff's appointing authorities were Lynn and Malchow, he understandably did not report their alleged misconduct to them.  The scheme in which Lynn and Malchow purportedly engaged was quite deliberate.  After entering into a contract with Lynn's acquaintance for the signs, they allegedly attempted to cover their tracks by publishing a notice seeking public bids and later releasing a memorandum stating that an immediate need for the signs required bypassing the normal bidding process.  Thus, Lynn and Malchow would not likely have been receptive to plaintiff's complaints or reported themselves to the Department of Investigation.  Notably, defendants concede that there was no duly designated individual to whom plaintiff could have reported his claims.

Under these particular circumstances, strict compliance with the reporting requirements of Civil Service Law § 75-b would not serve the purpose of the statute.  Rather, courts should use their discretion in determining whether the overall actions of the plaintiff constitute a good faith effort to report the misconduct.  In cases such as this -- where the appointing

authority is the one engaging in the alleged misconduct -- an employee's good faith effort to report the misconduct should be evaluated with attention to the employee's practical inability to report to the appointing authority.  The "good faith" provision in the statute affords courts the discretion to determine whether a plaintiff has met its requirements and appears to adequately account for situations like the one presented here.

Here, we hold that plaintiff complied with the statutory reporting requirement by informing his immediate supervisors of the misconduct and thereafter reporting the misconduct to the DOT Inspector General.  Whistleblowing is encouraged to prevent employer misconduct and provide appropriate remedies when it occurs.  Employees in situations like plaintiff's should not be required to report to the appointing authority where such a report would prove impractical and possibly impede prompt resolution of the matter.  Notably, here, plaintiff believed the appointing authority was on notice of the alleged improper governmental action, based on plaintiff and other employees' expression of concern after a DOT meeting, DOT employees' refusal to approve the appointing authority's purchase, and the appointing authority's subsequent solicitation of bids followed by the issuance of a backdated memorandum claiming that the process needed to be expedited. Additionally, in view of the requirement, set forth in both Executive Law No. 16 and the DOT employee handbook, that employees such as

plaintiff disclose misconduct to the DOT Inspector General directly and without undue haste or face possible termination of their employment, we cannot say that plaintiff lacked "good faith" in reporting to his immediate supervisors only one or two business days before he reported his allegations to the DOT Inspector General.  Therefore, given the conditions plaintiff was facing, an overall view of his actions demonstrates good faith compliance with Civil Service Law § 75-b.

III.

The second issue is whether the 2010 Appellate Division order properly determined that plaintiff is entitled to prejudgment interest.

The Civil Service Law provides that a public employee not subject to an arbitration agreement or a collective bargaining agreement is entitled to commence his or her action "under the same terms and conditions as set forth in article twenty-C of the labor law" (Civil Service Law § 75-b [3] [c]). The "terms and conditions" in that section incorporate the remedies in Labor Law § 740 (5).  That section states that the remedies available to employees who bring claims for retaliation include:

> "(a) an injunction to restrain continued
> violation of this section; (b) the
> reinstatement of the employee to the same
> position held before the retaliatory
> personnel action, or to an equivalent
> position; (c) the reinstatement of full

> fringe benefits and seniority rights; (d) the
> compensation for lost wages, benefits and
> other remuneration; and (e) the payment by
> the employer of reasonable costs,
> disbursements, and attorney's fees"

(Labor Law § 740 [5]).  The terms "compensation" and
"remuneration" are not defined by the statute (see Civil Service
Law § 75-b).

        This Court has held that where a statute does not
specifically list interest as recoverable, interest may be
available where a statute's legislative intent is to make its
victims whole and its language does not limit the recovery
available.  In Matter of Aurecchione, we concluded that
"[a]lthough the Human Rights Law, like [T]itle VII, makes no
specific reference to pre-determination interest, a liberal
reading of the statute is explicitly mandated to effectuate the
statute's intent" (98 NY2d 21, 26 [2002]).  Thus, because the
Human Rights Law permits individuals subject to employment
discrimination to recover "compensatory damages," we concluded
that allowing for prejudgment interest was consistent with the
"central concern" of the statute, which was "to make such victims
'whole'" (id.).  In Matter of Greenberg, we held that although
Workers' Compensation Law § 120 did not provide for prejudgement
interest, such interest was permissible because, like the Human
Rights Law, section 120 was an antidiscrimination statute with an
intent to fully compensate those discriminated against (see 7
NY3d 139, 142 [2006]).  That section states that an employee

"shall be compensated by his or her employer for any loss of

compensation," which we concluded provided for a "general right

to compensation," especially since its language that an employee

is "to be restored to the position or privileges [he or she]

would have had but for the discrimination" showed a "generalized

intention to undo harm done" (id. at 142-143).

Conversely, in Matter of Bello we held that no

prejudgment interest was available because Civil Service Law § 77

did not provide for a "general right to compensation" (5 NY3d

170, 173 [2005]).  The section provided that an employee subject

to unlawful removal:

> "shall be entitled to receive . . . salary or
> compensation which he [or she] would have
> been entitled by law to have received in such
> position but for such unlawful removal, from
> the date of such unlawful removal to the date
> of such restoration, less the amount of any
> unemployment insurance benefits he [or she]
> may have received during such period"

(id. at 172-173; see also Civil Service Law § 77).  This Court

concluded that this language restricted recovery to salary or

compensation and that, in this context, compensation "refers to

bonuses or other nonsalary forms of payment" (see id. at 173).

Additionally, we "hesitate[d]" in reading prejudgment interest

into the statute because Civil Service Law § 77, which allows for

monetary recovery against the State or its civil divisions,

"waives the State's sovereign immunity" and "[s]uch waivers are

to be strictly construed, [with] 'waiver of immunity by inference

being disfavored'" (id. at 173).

Here, an overall view of the comprehensive package of remedies listed in Labor Law § 740 (5), including undefined "compensation" and "remuneration," demonstrates that the Legislature sought to make a whistleblowing plaintiff whole, which would include an award of prejudgment interest. The remedies in Labor Law § 740 (5) are not as limited as Civil Service Law § 77, the statute evaluated in Matter of Bello. There was no room under Civil Service Law § 77 to consider whether prejudgment interest may be included. In contrast, Labor Law § 740 (5), provides courts with discretion to determine what is considered "compensation" and "remuneration." Further, because the remedies listed in the statute appear to seek to make a whistleblowing plaintiff whole, awarding prejudgment interest would serve that purpose. By demoting plaintiff rather than awarding him a planned promotion and significant raise, defendants deprived plaintiff of access to what would have been a higher salary for a period of over 10 years. Awarding back pay with interest would serve to make plaintiff whole; thus, he is entitled to such a recovery.

With respect to the amount of prejudgment interest awarded, plaintiff's expert Dr. Anne Bynoe testified during the damages trial and described the damages owed to plaintiff based upon his position and the promotion he was to receive using two comparators. Dr. Bynoe took into consideration inflation and interest when making her determination, and defendants failed to

refute her conclusions.  Therefore, as plaintiff is entitled to recover prejudgment interest and his expert's testimony concerning the amount of back pay, consequential damages and interest he is owed was unrefuted, the denial of prejudgment interest was an abuse of discretion.

Additionally, because reinstatement to the same or equivalent position is a remedy specifically provided by Labor Law § 740 (5), the Appellate Division did not err in providing that remedy given the liability determination that plaintiff was retaliated against for reporting Lynn and Malchow's misconduct.

IV.

Under the circumstances of this case, namely that plaintiff's appointing authorities were the individuals whom he alleged engaged in misconduct, plaintiff's overall conduct demonstrates good faith compliance with Civil Service Law § 75-b (2) (b).  Additionally, because Labor Law § 740 (5) indicates an intention to make a whistleblowing plaintiff whole, prejudgment interest was properly awarded.  Thus, the judgment appealed from and orders of the Appellate Division sought to be reviewed should be affirmed, with costs.

* * * * * * * * * * * * * * * *

Judgment appealed from and orders of the Appellate Division sought to be reviewed affirmed, with costs.  Opinion by Judge Abdus-Salaam.  Judges Pigott, Rivera, Stein and Fahey concur. Chief Judge Lippman took no part.

Decided October 22, 2015